Des Moines Steel Company, Appellant, v. Hawkeye
Amusement Company, Appellee, et al., Appellant.

**LANDLORD AND TENANT:** Fire Escape—Primary Duty of Own-
er. The landlord owner is, by statute, primarily under a duty
to erect all fire escapes. Lease and modification thereof re-
viewed, and held to impliedly contemplate the erection by the
owner of a fire escape in addition to those which he had con-
tracted in writing to erect, especially when such structure
would revert to the owner on the expiration of the lease. (Sec.
4999-a10, Suppl. Supp., 1915.)

*Appeal from Polk District Court.*—Joseph E. Meyer,
Judge.

November 22, 1919.

Plaintiff brought this action in equity-to recover from
both defendants for a fire escape, the material and labor for
the construction of which it furnished. Plaintiff also asked
that the amount due be declared a lien, and that the court
adjudicate and determine which of defendants, or whether
all, are indebted to plaintiff, and the amount. The trial
court found that the Unity Investment Company, appel-
lant, the owner of the building, was liable, and rendered
judgment and decree against it alone. The plaintiff has
also appealed, claiming that the judgment should have been
against both defendants.—*Affirmed on both appeals.*

*Nourse & Nourse* and *John L. Gillespie,* for appellants.

*Chester Strock,* for appellee.

Preston, J.—1. The only dispute in the case is as to
which defendant should pay for the outside iron work for
the additional fire escape on the west side of the owner's
building. There is little, if any, dispute in the testimony.
Neither the lessor nor the lessee ordered the fire escape

built. It was ordered by the architects, and it seems to be conceded that the architects represented both, in the remodeling of the premises for the theater and the lessor's premises on the west of the theater. The architects did not undertake to determine which should pay for the fire escape. Neither the lessor nor the lessee came to an agreement as to which was liable. It appears that, on the 21st day of July, 1917, the appellant Unity Investment Company leased to C. C. Taft, Abe Frankel, and Ira B. Thomas, jointly, by a written instrument, store rooms Nos. 719 and 721 West Locust Street, Des Moines, Iowa, to be used for "a moving picture show or for such other lawful mercantile business as lessees may desire," for a term of 10 years, at an annual rental of $10,000 per year.

This lease, after providing that said store rooms were to be remodeled for use as a moving picture show, according to plans attached thereto, made by Kraetsch & Kraetsch, architects, and specifications made by them, further provides as follows:

"The lessor further agrees to build a fire escape exit from the premises leased hereby, to Eighth Street, and also to build fire escape exits into the alley from said leased premises, to meet the fire requirements of the ordinances of the city of Des Moines, Iowa, and the laws of the state of Iowa now in force."

The lease further provides:

"The lessees and their subtenants shall at all times fully comply with all the laws of the United States and the state of Iowa, and with the rules, regulations and requirements of the board of health of the state of Iowa, and its several political divisions and with all ordinances of the city of Des Moines Iowa, in relation to the maintenance and use of the said premises, or the maintenance or use of the improvements at any time thereon."

Afterwards, on August 2, 1917, the lessees and the les-

sor entered into a further contract, supplemental to the original lease, which, after reciting the making of the lease of July 21, 1917, and that the lessees desired to also rent the second floor of the building, immediately over said storerooms, for which second floor they were willing to pay the additional sum of $2,400, then provides that the lease "shall be altered in the following particulars, namely:

"That the property leased thereby shall be as follows:

"Storerooms Numbers 719 and 721 West Locust Street, Des Moines, Iowa, approximately 44 by 132 feet in the gross, together with space in the south end of the basement thereunder 20 by 44 feet, to be partitioned off by the lessor for the lessee, and together with the second floor of the building in which said leased premises are situated, immediately over said storerooms. * * *

"That the lessor shall remove the second floor joists and partitions and build a fire wall upon the west side of the leased premises and plaster all of the space covered hereby, ready for decorating, so that said rooms, Numbers 719–721 shall be two stories in height.

"That all of the materials in the joists and partitions of the second floor, not needed by the lessor in making improvements agreed in said lease to be made by lessor, may be taken and used by the lessee in making any improvements therein they desire to make, without any compensation therefor.

"That in event the plans for the use of the said second floor as part of the playhouse contemplated, are submitted to the city council of the city of Des Moines, Iowa, and the said city council shall refuse to approve the said plans, as to said second floor for such use, then this supplement to the said lease shall be void and of no effect but said avoidance shall not affect the said lease of July 21, 1917.

"It is further agreed that the said lease of July 21, 1917, shall be so altered so that the rent to be paid by the

lessee to the lessor shall be $12,400 per year for each year of the term of the said lease, to be paid in equal monthly installments of $1,033.33⅓.

"It is further expressly agreed that all of the other terms, provisions and conditions of the said lease of July 21, 1917, not above altered, shall remain in full force and effect and shall be applicable not only to the property orig-inally leased and to the rentals to be paid therefor, but shall also be applicable to the additional property leased hereby and all rentals agreed to be paid in compensation therefor."

Later, lessees formed a corporation known as the Hawkeye Amusement Company, defendant herein, which Amusement Company assumed the performance of the lease and of the supplemental lease. Taft, Frankel, and Thomas were all immediately made officers and stockholders of the Amusement Company, and proceeded with the carrying out of the contracts of lease above referred to.

Kraetsch & Kraetsch, architects, drew the plans and superintended all of the work, not only what was done by the lessor, but also the work done by the lessee, and Wm. Knudson & Son were the contractors who did all the work of making the improvements for both of the defendants. The plans for the alteration of the second floor, including the construction of the balcony, were drawn after the plans were drawn and attached to the original lease, and that lease signed by the parties. There would have been no fire escape from the balcony, if the balcony had not been included in the latter plans. The only purpose that that fire escape serves—the cost of which is in controversy in this suit—is as a fire escape from the balcony.

The defendant Unity Investment Company built and paid for the fire escape or exit from the ground floor of the leased premises to Eighth Street, and for the fire escapes

or exits of that floor to the alley, being all of the fire escapes comprehended in the original lease.

The first floor of the building in question is about 19 feet in height, and both of the exits or fire escapes onto Eighth Street are built within the height of the first story, one above the other.

The Hawkeye Amusement Company directed the architects to build the balcony. The Unity Investment Company had nothing to do with erecting it, or telling the architects that it was wanted or needed.

The Hawkeye Amusement Company paid for the work of constructing the balcony, and paid for the outside metal door leading from the building onto the balcony fire escape. There was no inside door.

It further appears that the premises and location are known as the Rialto Theater. The west line of the theater is 22 feet east of Eighth Street. The theater entrance is on the north side of Locust Street, and the length of the building and theater room north and south is, from Locust Street to the alley on the north, approximately 132 feet. The frontage is substantially 44 feet on Locust Street. The north end of the room is the stage.

There are stairs and exits on each side of the stage; these two exits are to the alley on the north, and are the exits referred to in the first lease.

The second lease was entered into so that a balcony could be constructed and used, thus affording greater seating capacity. Under this, the Hawkeye Amusement Company became the lessee of the second floor, a balcony was constructed, which necessitated, "to meet the fire requirements of the ordinances of the city of Des Moines and laws of state of Iowa," the erection of a fire escape to Eighth Street from the balcony, which fire escape would necessarily have to be installed on the outside wall of the Unity Investment Company's building, and approximately 22 feet

west of the premises which were being used for the Rialto Theater. To reach this fire escape from the balcony, and to reach the fire escape from the first floor of the Rialto Theater, passageways through approximately 22 feet of the Unity Investment Company's building are used. No cases are cited by either side, nor are the statutes referred to by either. No provisions of any ordinance are in the record. It is conceded by both that the controversy must be determined from the contract of lease and supplement thereto, and the facts surrounding their performance. It is argued by defendant Investment Company that it is elementary that a landlord is not bound to make any improvements or repairs unless expressly stipulated in the lease, and that there is no provision in the lease or supplement for a fire escape from the balcony.

We do not understand that a lessee, in the absence of an express agreement, is bound to make substantial and lasting repairs or improvements. 16 Ruling Case Law 1085, Section 603. He may do so at his own expense, if he wishes to. It is not claimed that the fire escape would come under the head of repairs. It will be observed that the additional fire escape in question is not on, or any part of, the premises leased to the Amusement Company. It is attached permanently to the owner's building, and that part of the building not leased to the Amusement Company; so that it will revert to the owner at the expiration of the term. We think this fact is of some importance in determining who is liable for the cost of the fire escape. It seems to us that the statutes have a bearing. The sections in relation to fire escapes are Code Sections 712 and 876 and Supplemental Supplement, 1915, Sections 4999-a6 to 4999-a11, inclusive.

Section 4999-a6, as it appeared in the Code Supplement, 1913, provided that:

"The owners, proprietors and lessees of all buildings,

structures * * * shall provide for and equip said buildings and structures with such protection against fire and means of escape from such buildings as shall hereafter be set forth in this bill."

That section was repealed by the thirty-sixth general assembly, and as it appears now in the Supplemental Supplement, 1915, citations before given, we do not find that any such provision is contained therein. Section 4999-a10, Supplemental Supplement, 1915, imposes the duty of inspection upon certain persons and boards, and provides that:

"It shall be the duty of any inspector required by law to inspect fire escapes or means of escape from fire to serve or cause to be served a written notice in behalf of the state of Iowa upon the owner if he be a resident of the county in which the buildings are situated, or if he be a nonresident of such county, then upon his agent or lessee, that the buildings within this state are not provided with fire escapes in accordance with the provisions of this act, * * * notifying such owner of such want of fire escapes, * * * and notifying him to comply with the law * * * The owner, by himself, his agent or lessee, may appeal from the action or requirement of any inspector. * * *"

Section 4999-a11, Supplemental Supplement, 1915, provides that:

"Any person who shall violate any of the provisions of law relating to fire escapes or means of escape from fire or any owner, agent or trustee having the full care and control of any building and who has been served with notice as provided herein * * * shall be subject to a fine * * *"

In the instant case, the owner has full care and control of that part of the premises where the fire escape is attached, at least so far as the Amusement Company is concerned. Section 4999-a7, Supplemental Supplement, 1915, provides that additional fire escapes shall be provided, un-

der some circumstances, and when required by those author-
ized by law to regulate and fix the number of fire escapes.
It would seem, then, that, under these provisions, the law
imposes upon the owner the duty to provide fire escapes.
As said, this question has not been argued; and however
this may be, we think that, under a proper construction of
the leases, the owner is liable, as between it and the lessee.
Appellant emphasizes the fact that, in the original lease,
the language is that the lessor agrees to build "a fire es-
cape exit" to the west, and "fire escape exits" to the alley.
The argument is that this required him to build but one
fire escape to the west, and that he has complied with that
requirement of the lease. It is doubtless true that the par-
ties contemplated only the one fire escape to the west at
that time.  But the lessor undertook to provide a fire es-
cape.  Does this mean any more than that he was to fur-
nish an adequate fire escape, and escape from fire? Neither
one of the leases requires, in terms, that the lessee is to
provide any fire escape.  Suppose no supplemental lease
had been made, and the fire inspector had, notwithstand-
ing the provisions of the original lease, required more than
one escape to the west, could it be claimed that the lessee,
rather than the owner, would be required to build such ad-
ditional escape? We think not. It will be noticed further
that the provision in the original lease referring to a fire
escape, and to fire escape exits into the alleys, provides that
lessor agrees "to meet the fire requirements of the ordinanc-
es of the city of Des Moines, Iowa, and the laws of the
state of Iowa now in force." The supplemental lease specifi-
cally provides that the original lease stands, except as modi-
fied, and there is no modification or change in regard to
fire escapes.  Appellant also relies on the following provi-
sion in the original lease, which they concede was not chang-
ed:

"The lessees and their subtenants shall at all times

fully comply with all the laws of the United States and the state of Iowa and with the rules, regulations and requirements of the board of health of the state of Iowa, and its several political divisions, and with all ordinances of the city of Des Moines, Iowa, in relation to the maintenance and use of the said premises, or the maintenance or use of the improvements at any time thereon."

And they argue that this means that, if any further or future requirements were made by the public authorities, the lessees, and not the lessor, must bear the expense. It does not seem probable that this was in the minds of the parties, when the supplement to the lease was drawn, because, concededly, both parties supposed, at the time the above provision was inserted, that there would be no further fire escapes required. We do not understand from the record that the additional fire escape was required because additional space was leased by the supplement, though counsel for both sides seem to assume that such is the fact, and doubtless it is so. The second lease contains a provision before set out, that lessor shall build a fire wall upon the west side of the leased premises. It appears that the lessee paid for a metal fire door, and it is thought by appellant that this is a circumstance to be considered, in construing the contracts. This may be so, and yet it is not contended that the door is a part of the fire escape, and the matter as to the payment for the door is not in controversy. As said, the only provision in either lease as to fire escapes is contained in the first one, and the second provides that all other provisions in the first, not altered by the second, shall remain in full force, and shall be applicable not only to the property originally leased, but also be applicable to the additional property leased hereby, etc.

2. As to plaintiff's appeal, the argument is very brief, —less than two pages,—and there is no argument, or reasons given why both defendants are liable. The purpose of

the appeal seems to be, and that is the suggestion, that its rights may be protected, and that, if the case is reversed on the owner's appeal, plaintiff may have judgment against the lessee.

We reach the conclusion that the trial court rightly determined the matter, and the judgment is, therefore,—*Affirmed.*

Ladd, C. J., Evans and Salinger, JJ., concur.