KUNKEL AUTO SUPPLY COMPANY, APPELLEE, v. HUGH LEECH, APPELLANT.

298 N. W. 150

FILED MAY 9, 1941. No. 31024.

*Meeker & Curtis* and *Charles R. Shopp*, for appellant.

*Beatty, Maupin, Murphy & Davis*, contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and YEAGER, JJ.

SIMMONS, C. J.

This appeal presents the sufficiency of the allegations of an answer to constitute a defense and of a counterclaim to constitute a cause of action.

So far as material here, the allegations of plaintiff's petition may be summarized as follows: On or about August 1, 1938, defendant, for a valuable consideration, executed and delivered to plaintiff his promissory note promising to pay the sum of $71 on each of the 24 succeeding months; that thereafter plaintiff indorsed and delivered said note to a credit company and agreed to pay any amounts not paid by the maker; that defendant paid upon said note a total of $192 and failed to make other payments; that plaintiff paid the holder $518 for which it prays judgment.

Defendant admits the execution and delivery of the note, the payments, and denies other allegations. For further defense and counterclaim defendant alleges the following

history of the transaction which is the basis of this litigation. Defendant operated a garage at Imperial, Nebraska. Subsequent to the passage of Legislative Bill 147 by the 1937 legislature (Laws 1937, ch. 141) and on February 19, 1938, plaintiff solicited defendant to buy certain equipment which plaintiff advised defendant would be sufficient to equip and qualify defendant's garage as an official inspection station of automobiles under the provisions of said act, and that no other equipment would be needed. The defendant, relying upon said statements and apparent special knowledge of the plaintiff, purchased the property, made certain down payments and gave his note for the balance. The plaintiff sold the note to a *bona fide* holder for value, to whom defendant made certain payments. The equipment was delivered March 4, 1938. Later, about June 1, 1938, plaintiff revealed to the defendant that the equipment failed to meet the requirements of the state so as to obtain recognition of defendant's garage as an official testing station, and that for his garage to be qualified under the act additional equipment would have to be purchased. The defendant proposed to rescind the purchase and made the necessary tenders and demands. Plaintiff refused to accept rescission, advised defendant that the holder of the note would bring suit thereon and that defendant's way out was to buy additional equipment. Defendant, believing he would be sued on the note, and that he had no defense thereto and apprehensive of the effect of litigation on his business, entered into a new contract, purchased additional equipment, and executed and delivered the note which is the basis of plaintiff's cause of action. The plaintiff sold the new note to a *bona fide* holder and defendant made certain payments to it.

Defendant further alleged that the purchase of the equipment and the execution and delivery of the note in question were based upon the continued existence and enforcement of Legislative Bill 147, and that the continued existence and enforcement of the act were implied terms of said note; that it was assumed that all owners of vehicles would be

required to have their vehicles tested, and that by reason thereof said property would earn enough to pay the instalments on the note; that plaintiff assured defendant that that would happen and defendant relied thereon when he executed the note in question. Both plaintiff and defendant were mistaken. It never was compulsory thereafter for the owners of vehicles to have their cars tested; the law never was enforced in defendant's trade territory and on April 22, 1939, the act was repealed. Laws 1939, ch. 78. The defendant had had no profits and the equipment has been valueless and useless to him. The objects contemplated by plaintiff and defendant were frustrated, so as to excuse defendant from payment. Defendant alleged that, by reason of the breach of warranties, fraud, misrepresentations, business compulsion, coercion, constraint and duress, and mutual mistake and frustration, the consideration for the note failed and that the note is void.

February 1, 1939, defendant elected to rescind, offered to return the equipment on the condition that plaintiff repay the payments made in the sum of $589.61. Plaintiff refused to accept. Defendant tendered the equipment into court. Defendant prayed that the petition be dismissed, that the note be adjudged void so far as any interest of the plaintiff therein is concerned, that he have judgment for $589.61 and a lien on the equipment until the sum is paid. Defendant prayed for equitable relief.

Plaintiff demurred for the reason that defendant's answer and counterclaim did not state facts sufficient to constitute a defense, nor plead facts sufficient to constitute a cause of action against the plaintiff. The court sustained the demurrer and defendant elected not to plead further. Judgment was entered against defendant in the sum of $553.88, interest and costs.

Defendant appeals. He presents no assignments of error as required by rule 13-a-1(d) of this court. Plaintiff not raising that matter, it will be deemed waived and the case considered on the questions presented by the demurrer in the trial court.

Defendant's allegations may be reduced to these propositions: He purchased the original equipment believing that it would enable him in his business to meet the requirements of the act, test vehicles thereunder and profit therefrom. It was subsequently revealed that the equipment would not meet the requirements of .the act. He attempted to rescind. Confronted with the fact that his note was in the hands of an innocent purchaser, believing that suit would be brought and that he had no defense and desiring to avoid litigation thereon, and rather than litigate his alleged right of rescission, and desiring to qualify for business under the law, he purchased the additional equipment, gave the note in question upon the representations of the plaintiff and his belief that the law would be enforced and continue in effect and that he would profit thereby. The law was not enforced; it was repealed. The profits did not materialize, both the plaintiff and defendant were mistaken and because thereof defendant seeks to avoid liability so far as the plaintiff is concerned.

If the answer fails to state a defense, it is obvious that the counterclaim likewise must fail. The alleged transactions leading up to the execution and delivery of the note in question do not present a defense. Defendant knew of the facts of the failure of the equipment to meet requirements on June 1, 1938. The note in question was executed August 1, 1938. During that time, the defendant had ample time and opportunity to determine his rights and liabilities and determine the course he was to follow. There are in the situation no elements of duress of person or goods which would enable plaintiff to avoid liability on the note. This court has said: "The mere apprehension of legal proceedings, unaccompanied by any act of hardship or oppression, has never been held sufficient ground for the avoiding of a contract. * * * Where the parties are on terms of equality towards each other, one threatened with civil process is required to make his defense in the first instance to the merits of the claim, and cannot postpone litigation by paying the demand and afterward maintain an

action therefor." *Weber v. Kirkendall,* 44 Neb. 766, 63 N. W. 35. See, also, *Karschner v. Latimer,* 108 Neb. 32, 187 N. W. 83. Also, "Where one has voluntarily, with full knowledge of the facts, paid a disputed demand, which he claimed he did not owe, he cannot ordinarily recover it back on the ground of its invalidity." *Meyer v. Rosenblatt & Son,* 119 Neb. 471, 229 N. W. 771. "A threat to do what one has a legal right to do cannot constitute duress. Such as * * * a threat of * * * a lawsuit." 13 C. J. 399. See 55 C. J. 1079; 66 C. J. 630; 17 C. J. S. 530, sec. 172.

Defendant's second defense is based on the proposition that the parties contemplated at the time the note was given and the equipment purchased that the law as it then existed would be continued in effect and enforced; that the subsequent failure to enforce the law and its repeal excuse performance. Defendant cites in support of his position what he terms the doctrine of commercial frustration. He cites 13 C. J. 642 (to which we add 17 C. J. S. 956, sec. 464); 12 Am. Jur. 10, sec. 383; 6 Williston, Contracts (Rev. ed.) secs. 1935, 1972; Restatement, Contracts, sec. 288, and supporting cases.

The rule urged by the defendant cannot be applied to the facts upon which his defense is based. This court reviewed the legislation in question in *Beisner v. Cochran,* 138 Neb. 445, 293 N. W. 289. It was there said: "Plaintiffs are presumed to have known that the continued existence of the license was dependent upon the willingness of the legislature to keep the statute creating it in force." So here the parties must be presumed to have contracted, not on the basis that the law would be continued in effect and enforced, but that any rights or business opportunities resting upon the law were contingent upon the willingness of the legislature to keep the act in force. Plaintiff cannot be held to have contracted by implication that the law would continue in existence. It contracted to sell the defendant certain property which defendant proposed to use for certain purposes. Plaintiff performed. Defendant charged himself with an obligation possible to be per-

formed, to wit, pay for the property purchased and delivered. He must perform his part of the contract. 13 C. J. 635; 17 C. J. S. 946, sec. 459. His performance is not excused by the mere fact that the purpose for which he purchased the goods turned out to be unprofitable. 13 C. J. 636; 17 C. J. S. 946, sec. 459.

The contract, so far as the plaintiff is concerned, was fully performed before the alleged defense arose. The rule relied upon by the defendant applies to executory contracts alone. 17 C. J. S. 952, sec. 463e; Restatement, Contracts, sec. 289.

Defendant states that the doctrine of commercial frustration arose in England as a result of the coronation case. In the cited case, a party contracted to pay for a flat from which to view the parade. The parade was not held and the defendant was excused from paying the balance of the rent. It is noted that in the development of that litigation it was held that money paid for seats could not be recovered. 6 Williston, Contracts (Rev. ed.) sec. 1954.

The judgment of the trial court is

AFFIRMED.