Joseph M. WHELAN and Marian S. Whelan,
Appellants,

v.

GRIFFITH CONSUMERS COMPANY,
Appellee.

Helen O. VIERLING, Appellant,

v.

·GRIFFITH CONSUMERS COMPANY,
Appellee.

Nos. 2720, 2721.

Municipal Court of Appeals for the
District of Columbia.

Argued March 20, 1961.

Decided April 28, 1961.

Rehearing Denied May 22, 1961.

Bartholomew B. Coyne, Washington, D.
C., for appellants.

Walter M. King, Jr., Washington, D. C.,
with whom Charles R. Richey, Washington,
D. C., was on the brief, for appellee.

Before HOOD and QUINN, Associate
Judges, and CAYTON (Chief Judge, Re-
tired) sitting by designation under Code, §
11–776(b).

CAYTON, Acting Judge.

Appellant Vierling was the owner and
appellant Whelan the lessee of a farmhouse
in Colesville, Maryland. They sued Griffith
Consumers for failure to deliver fuel oil,
which failure they claimed resulted in the
freezing of the heating plant and also in
other damages. The trial court found for
defendant and plaintiffs have brought this
appeal.

On February 14, 1958, Whelan placed
with Griffith an order for fuel oil to be
delivered that day on an agreed C.O.D.
basis. The driver, Donaldson, testified that
upon arrival at the premises he found no
one at home and left a note indicating that

he had been there. The next morning, February 15, Whelan again called appellee and ordered oil for that day on the same basis. Again Donaldson attempted to make delivery but found no one at home. Whelan claimed he had arranged with an employee at the Griffith office to leave $20 in payment for the oil in an envelope on top of the oil tank. The driver said he had no knowledge of this.

During the morning of February 15 a heavy snow began to fall and continued well into the next day resulting in an accumulation of approximately 14 inches. The weather report for February 15–16 states as follows:

"Snowfall of 14.4 inches on the 15–16, greatest amount since February 6–7, 1936, when 14.4 inches also fell."

The weather report further recited that the average wind velocity on February 16 was 19.7 miles per hour and reached a high of 33 miles per hour.

The next morning, February 16, Whelan again called appellee and ordered oil and was told that delivery would be made "as soon as possible." Donaldson and his truck were promptly dispatched from the Griffith plant several miles away in Washington. When he reached the Whelan farm he said he found the driveway to the house impassable due to snowdrifts approximately 6 feet high; he drove down the road in order to find a place to turn around, and in attempting the turn the truck became stuck in the snow. He testified that after approximately 6 hours his truck was finally removed with the assistance of a wrecking truck and was towed in first gear and with considerable difficulty back to the main highway. Donaldson said that while being towed past appellants' property, he observed that the field adjacent to the house was heavily snowdrifted. Due to the near blizzard conditions and the condition of his truck, he did not attempt to make delivery across the field and through an opening Whelan said he had made in the fence. Whelan testified that this was not the case

but that the field was easily traversable; also that Donaldson was not being towed past his property but was proceeding under his own power. Plaintiffs presented evidence contradicting other parts of the driver's testimony. But the trial judge found among other things that the first two attempts to deliver oil failed because no one was at home to receive it. He also found that on the third attempt (February 16) the driver was precluded from completing delivery because of being stuck in the very heavy snowstorm; also that the normal roadway to the Whelan farmhouse was impassable and there were snowdrifts in the fields.

■ Of the errors assigned by appellants, several challenge the correctness of the findings just mentioned. Our study of the transcript leaves us with no doubts that the failure of delivery and the reasons therefor presented factual issues, which on the evidence the trial judge was justified in resolving in favor of defendant.

■ Nor do we find any doubt concerning the applicable law. It is well settled that when, due to circumstances beyond the control of the parties the performance of a contract is rendered impossible, the party failing to perform is exonerated. It has been held that impossibility is not limited to legal impossibility. Murphy v. North American Co., D.C.S.D.N.Y., 24 F.Supp. 471, modified on other grounds in 2 cir., 106 F.2d 74. The doctrine of frustration of performance is not limited to strict impossibility, but includes impracticability due to extreme or unreasonable difficulty or expense. Restatement, Contracts § 454 (1932); IV Corbin, Contracts § 1325 (1951). Cases like Montauk Corp. v. Seeds, 215 Md. 491, 138 A.2d 907, relied on by appellants are not applicable here. They deal with the duty to reasonably foresee a supervening event. Here the defendant did foresee the snow and dealt with it by equipping the truck with skid chains. Under the circumstances of this case appellee's driver was not required to take further

risks, defy the elements, and plow into an impassable roadway.

Appellants argue that the trial court should have held Griffith liable because the driver did not stop at the approach to the Whelan roadway and deliver oil in containers in Whelan's possession. There was no evidence that such method of delivery was within the contemplation of the parties, and it would not have been proper to base a holding of liability on this ground.

Another assignment of error relates to the validity and effect of mutual releases executed between Whelan and Vierling some months after the episode here involved. We do not reach that question, in view of our ruling as to impossibility of performance. And we have found no grounds for reversal in other assignments of error.

Affirmed.