501 P.2d 22

Robert GARNER and Tom Parker,
Appellants,

v.

George D. ELLINGSON and La Vedna
Ellingson, his wife, Appellees.

No. I CA–CIV 1685.

Court of Appeals of Arizona,
Division 1,
Department A.

Sept. 19, 1972.

Rehearing Denied Oct. 17, 1972.

Review Denied Nov. 14, 1972.

Richard Jay Rubin and Robert A. Hertz-berg, Phoenix, for appellants.

Green & Green, by Ward S. Johnson, Phoenix, for appellees.

CASE, Judge.

This appeal is from a judgment of the Superior Court of Maricopa County in favor of defendants-appellees and against plaintiffs-appellants for the full amount of rent due and owing under a lease agreement.

The facts viewed in a light most favorable to sustaining the judgment of the trial court are as follows: The appellants, on behalf of a corporation to be formed, desired to lease certain premises from the appellees for the purpose of operating a movie theatre and bookstore. The lease negotiations were conducted by the attorneys for the respective parties.

As a result of these negotiations, arrangements were made whereby the appellees would accept a corporation to be formed as lessee and excuse the appellants from any personal liability. In consideration of this arrangement, appellants agreed to pay $1404 as a prepaid rental deposit.

In November, 1969, after concluding the negotiations, a formal written lease was

executed between the appellees as lessors and Associated Theaters of Arizona, Inc. as lessee. Associated Theaters was the corporation which appellants intended to form. The record reveals that the Articles of Incorporation were never filed and, as a result, the proposed corporation never came into existence. The term of the lease was one year, and subsequent to its execution the appellants' check for the prepaid rent was mailed to the appellees' attorney.

A short time thereafter, appellants attempted to obtain the necessary permits and licenses from the City of Phoenix so that they could begin to remodel the demised premises into a theater and bookstore. The City advised appellants that no permits or licenses could be issued until certain fire hazards in the leased premises and adjacent premises were eliminated through installation of sprinkler systems and other modifications. The adjacent building which required a sprinkler system was also owned by the appellees.

Appellants' contractor, who had inspected the leased premises prior to the execution of the lease, was apparently not aware of these defects and as a result did not warn the appellants of the possible construction costs. It is clear from the record that none of the parties actually knew this type of structural change would be necessary.

During January, 1970 appellants' attorney contacted appellees' attorney and requested return of the $1404 prepaid rent because appellees were unwilling to bear the expense of the necessary structural alterations. After appellees' refusal to return the funds, appellants advised appellees that they were prepared to bear the cost of alterations to the demised premises if appellees would similarly repair the adjacent premises. This proposal was also refused.

Thereafter, appellants commenced the instant litigation in Superior Court, Maricopa County, seeking recovery of the $1404 prepaid rent and the sum of $1250 paid to a contractor for work performed on the demised premises. The appellees counterclaimed for the full amount of rent due under the terms of the lease.

After trial, without a jury, judgment was entered denying appellants' claim and granting appellees' counterclaim for the total amount of rent due under the lease. This appeal followed.

The dispositive question before us on appeal is whether performance under the lease agreement was "commercially frustrated" by the required structural changes to the demised and adjacent premises so as to relieve all parties of their obligations under the lease. We would answer in the affirmative.

The question of law presented by this appeal appears to be one of first impression in Arizona. A careful review of the authorities in Arizona has failed to uncover any decisions which deal precisely with the issue at bar. After carefully reviewing decisions in other jurisdictions, we have adopted the view which we believe incorporates the most sound reasoning.

A general definition of "commercial frustration" has been stated as follows:

"It is well settled that when, due to circumstances beyond the control of the parties the performance of a contract is rendered impossible, the party failing to perform is exonerated." Whelan v. Griffith Consumers Company, 170 A.2d 229, 230 (D.C.App., 1961).

■ It should be noted that the doctrine of commercial frustration is not necessarily limited to strict impossibility, but includes impracticability caused by extreme or unreasonable difficulty or expense. Whelan, supra.

A thorough discussion of the doctrine and its applicability is set forth in Lloyd v. Murphy, 25 Cal.2d 48, 153 P.2d 47 (1944). Justice Traynor, in a well-reasoned opinion, states:

"The question in cases involving frustration is whether the equities of the case, considered in the light of sound public policy, require placing the risk of a disruption or complete destruction of the

contract equilibrium on defendant or plaintiff under the circumstances of a given case . . . and the answer depends on whether an unanticipated circumstance, the risk of which should not be fairly thrown on the promisor, has made performance vitally different from what was reasonably to be expected (6 Williston, op. cit. supra, § 1963, p. 5511; Restatement, Contracts, § 454)." 153 P. 2d at 50.

As to the condition precedent which must exist before the doctrine can be applied, Justice Traynor continues as follows:

> "The purpose of a contract is to place the risks of performance upon the promisor, and the relation of the parties, terms of the contract, and circumstances surrounding its formation must be examined to determine whether it can be fairly inferred that the risk of the event that has supervened to cause the alleged frustration was not reasonably foreseeable. If it was foreseeable there should have been provision for it in the contract, and the absence of such a provision gives rise to the inference that the risk was assumed." 153 P.2d at 50.

The doctrine of frustration has been severely limited to cases of extreme hardship so as not to diminish the power of parties to contract, and, in addition, the courts in applying the doctrine have required proof from the party seeking to excuse himself that the supervening frustrating event was not reasonably foreseeable. Lloyd v. Murphy, supra.

In the present case, we must determine whether the requirement to install a sprinkler system was a reasonably foreseeable event which the appellants should have contemplated. The appellees argue strenuously that possible repair to the demised premises was foreseeable and the order of the City should not excuse appellants from their obligation under the lease merely because performance was more expensive. They also urge that a proper interpretation of the lease indicates that lessee is responsible for structural changes.

Appellants, on the other hand, assert the proposition that the appellees, as landlord, are responsible for any structural changes and that under the lease there is no obligation on appellants.

Both arguments are persuasive and if, indeed, our only concern was with the leased premises, we would be obligated to hold that possible structural repairs were reasonably foreseeable. We are not faced with that problem, however. The facts clearly show that appellants were willing to repair the demised premises. Our primary concern is the question of which parties' obligation, if either, it was to repair the adjacent premises.

In Buckley v. Ligget, 218 A.2d 515 (D. C.App., 1966) the public authorities required that fire protection be added to a building, only part of which was leased. The court held:

> ". . . the lease contemplated only such repairs as may be applicable to the operation of the laundromat on the ground floor and did not encompass repairs or major improvements to other parts of the building for purposes not directly associated with the laundromat and which were primarily for the benefit of the landlord." 218 A.2d at 516.

*See also,* Des Moines Steel Co. v. Hawkeye Amusement Co., 187 Iowa 940, 174 N. W. 703 (1919).

In the present case, the undemised premises to be repaired were not even part of the same premises, but were adjacent to the demised premises. We find no authority or logic which would place a duty on a lessee to foresee possible repairs to a premises which were not a subject of a lease. The disputed repairs involved a premises not included in the lease agreement and we find no evidence to show that either of the parties contemplated, or should have reasonably foreseen, that repairs would be needed to a premises not a subject of the lease agreement. If this fact had been known, it seems unlikely that a lease agreement would have been reached. The lease was for one year only, and it is uncontroverted that the sprinkler

system in both premises would accrue to appellees at the end of the lease term. There is no indication that this was contemplated by either of the parties.

We do not believe that the duty to repair under these given facts was placed on either of the parties, but rather we hold that the government-imposed repairs on the undemised premises was an event not reasonably foreseen by either of the parties and that the extreme impracticability of performing these repairs so frustrated the value of the agreement between the parties so as to render the lease agreement worthless.

We need not concern ourselves with the collateral issues raised by the parties as they are not determinative of this appeal.

The cause is hereby reversed and remanded to the trial court for proceedings not inconsistent with this opinion.

STEVENS, P. J., and DONOFRIO, J., concur.