559 P.2d 683

**S. KORMAN and Sylvia Korman, Appellants,**

v.

**Robert H. KIECKHEFER, Virginia O. Kieckhefer and Walter F. Kieckhefer, Jr., as Trustees, Appellees.**

**No. 1 CA–CIV 3101.**

Court of Appeals of Arizona, Division 1, Department A.

Nov. 26, 1976.

Rehearing Denied Jan. 4, 1977.

Review Denied Feb. 1, 1977.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Wilbert G. Anderson, Phoenix, for appellants.

Fennemore, Craig, von Ammon & Udall by Philip E. von Ammon, Dwayne L. Burton, Phoenix, for appellees.

OPINION

NELSON, Judge.

This action arose out of an escrow agreement entered into on April 4, 1973 between S. Korman, appellant herein, and the Kieckhefers, appellees herein, providing for the sale of certain property along North Central Avenue in Phoenix which Korman wanted to acquire, along with other property not involved in this agreement or lawsuit, to construct a high-rise hotel-apart-

ment complex. The sale was contingent upon the securing of appropriate zoning and site plan approval of the City of Phoenix. The agreement provided that if the buyer, Korman, failed to furnish to the seller (Kieckhefers), within forty days from the date the escrow instructions were signed, an appropriate site plan and other data reasonably necessary to enable the seller to file the appropriate zoning and site plan application with the City of Phoenix, the zoning contingency was waived and the seller could pursue any remedy available.

No formal application for a zoning change was made to the City of Phoenix. Appellant filed a complaint in the Maricopa County Superior Court seeking declaratory relief regarding the effect of the escrow contract. Appellees answered and counterclaimed against appellant S. Korman and filed a third party complaint against Korman's wife, appellant Sylvia Korman, seeking specific performance of the escrow agreement. Appellees filed requests for admissions and served interrogatories on the Kormans. The depositions of Frank Haze Burch, a Phoenix attorney expert in zoning matters, and agreed to by both parties in the escrow agreement to handle this particular zoning case, and of Robert H. Kieckhefer, one of the appellees, were taken. Thereafter, appellees sought summary judgment.

On January 16, 1975, the Superior Court granted summary judgment in favor of the Kieckhefers. Judgment was entered on February 7, 1975, directing the Kormans to specifically perform their duties and obligations under the escrow agreement in question. This appeal followed. *We affirm the judgment of the superior court.*

The basic question before the court is whether the Kormans waived the zoning contingency as provided for in the escrow instructions, pertinent parts of which are set forth in the margin.[1] The facts necessary to resolve this issue are not contested.

In March of 1973, Korman had entered into a similar escrow agreement to acquire

1. "c. This sale is contingent upon Seller, at Buyer's sole cost and expense and in Seller's name only, securing appropriate zoning and site plan approvals from the City of Phoenix for the development of a hotel-apartment complex on the real property. If the City of Phoenix declines to grant such zoning or declines to approve the site plan which, in addition to all other plans and data as and when required by the City of Phoenix, will be prepared by Buyer at Buyer's sole cost and expense, then Buyer may, at Buyer's election, cancel this escrow, in which case all earnest money deposited herein shall be refunded to Buyer. Seller agrees to file the appropriate zoning and site plan applications, to be furnished to Seller by Buyer, within forty-five (45) days from the date hereof. If Buyer fails to furnish to Seller within forty (40) days from the date these instructions are signed and returned to escrow agent an appropriate site plan and such other data as shall reasonably be necessary to enable Seller to file an appropriate zoning and site plan with the City of Phoenix, the contingency in this paragraph respecting Buyer's obligation to purchase shall be deemed waived by Buyer and Seller may pursue any available remedy at law or in equity. All plans and data furnished to Seller by Buyer shall be reasonably in accordance with sound and generally accepted architectural, planning and engineering standards.

"d. The parties hereto agree that the attorneys for the zoning and site plan approval shall be Messrs. Burch, Cracchiolo, Levie, Guyer & Weyl, 2333 North Central Avenue, Phoenix, Arizona. Buyer agrees to and shall pay all the costs and expenses of such attorneys.

"e. Buyer agrees to and shall indemnify and hold harmless Seller and Seller's successors and assigns, from and against all costs, expenses, fees and liabilities arising out of or related to securing appropriate zoning and site plan approvals from the City of Phoenix, including, but not limited to, architects' fees, engineering fees; attorneys' fees; planning fees; filing fees, costs and expenses, reproduction fees, costs and expenses and any other related fees, costs or expenses.

"f. The date of compliance and close of escrow shall be November 15, 1973, or thirty (30) days after the required zoning and site plan approvals have been given by the City of Phoenix, whichever date first occurs. If, however, on November 15, 1973, the zoning and site plan applications are pending before the City Council of the City of Phoenix, said compliance date shall be extended to a date ten (10) days after the Council renders a final decision on said applications; provided, however, that if the City of Phoenix has not rendered a final decision on or before February 15, 1974, Buyer or Seller, at the election of either, may cancel this escrow, in which case all earnest money deposited herein shall be refunded to Buyer."

property from another seller to construct his hotel-apartment high rise complex. The escrow instructions contain almost identical provisions (see Note 1, *supra*) regarding zoning. Frank Haze Burch was the mutually agreed-upon zoning attorney in that sale also. As a result of preliminary discussions with the people in the Planning Department of the City of Phoenix, it was determined that the Kieckhefer property would also be needed. This suggestion of the City of Phoenix Planning Department resulted in the escrow here in question.

Attorney Burch had numerous contacts with the Planning Department of the City of Phoenix subsequent to the signing of the second escrow. Ultimately the Planning Department indicated that it would not recommend that the complex be approved unless Korman would obtain right of way for the extension of First Avenue from Cypress to Holly, west of the proposed development. To accomplish this, additional property, not contiguous to the Kieckhefer land, would have to be acquired. Efforts to accomplish this acquisition failed. The City of Phoenix offered, informally, to employ its powers of condemnation, so long as Korman would be fully responsible for the judgments, whatever they were. Faced with these problems and all that they entailed in terms of potential cost, Korman decided to abandon the project.

The only question presented here is whether the zoning provision was waived by the failure of the buyer to furnish the seller with a site plan and appropriate data to enable the seller to file an appropriate zoning and site plan with the City of Phoenix. While appellant argues that the submission of such material to the mutually agreed-upon attorney would be sufficient, since the record is clear that no formal site plan or other data sufficient to make a formal application for zoning and site plan approval was ever furnished, we deem it unnecessary to reach that issue.

■ The crux of appellant's argument is that the careful and thorough *informal* presentation of this matter to the planning staff of the City of Phoenix, with the results as indicated above, by a mutually agreed upon zoning attorney, was the equivalent of a formal denial of the zoning application by the City of Phoenix and thus satisfied the contingency allowing the buyer to withdraw from the sale. While the parties to an agreement such as this certainly could agree to abide by the zoning attorney's opinion as to the availability of the zoning, if they so desired, this agreement cannot be so read.

■■ It is unquestionably the law that agreements which are clear and unambiguous will be enforced according to their terms and the words used will be given their normal ordinary meaning. *Brady v. Black Mountain Investment Company,* 105 Ariz. 87, 459 P.2d 712 (1969); *Employment Security Commission v. Amalgamated Meat Cutters & Butcher Workmen of North America, Local No. 448,* 22 Ariz.App. 54, 523 P.2d 105 (1974); *Lyon v. Big Bend Development Co.,* 7 Ariz.App. 1, 435 P.2d 732 (1968). There is nothing complicated about the language of the instructions, *supra.* They anticipate a formal filing of a zoning application with the City of Phoenix. Neither the sellers nor their mutually agreed upon attorney, Burch, were ever placed in a position by the buyers, as required by the escrow agreement, to make the required application. The contingency was clearly waived as provided in the instructions.

■ Appellants urge that because the action of the city staff made it virtually impossible to obtain the zoning needed, any further efforts would merely be pro forma, and the fulfillment of the zoning contingency was effectively frustrated within the meaning of *Garner v. Ellingson,* 18 Ariz. App. 181, 501 P.2d 22 (1972). The doctrine of "commercial frustration" is simply not applicable to this situation. As Judge Case stated in *Garner*:

"The doctrine of frustration has been severely limited to cases of extreme hardship so as not to diminish the power of parties to contract, and, in addition, the courts in applying the doctrine have required proof from the party seeking to

excuse himself that the supervening frustrating event was not reasonably foreseeable." 18 Ariz.App. at 183, 501 P.2d at 24.

The allegedly frustrating event here was the demand of the city staff, alleged here to be at least unreasonable if not totally outside the power of the city to require, as a prerequisite to their recommending favorable action to the City Planning and Zoning Commission and then to the City Council. In light of the language of the agreement and considering the fact that this very escrow was a result of demands by the city staff, it is difficult to imagine that their additional demands, either reasonable or otherwise, were not to be foreseen. Indeed, the record reflects that the extension of First Avenue was clearly reasonable and foreseeable to facilitate the additional traffic. It was only the degree of involvement, if any, by the developer in acquiring this access which may have been unreasonable.

In any event, no serious contention can be made that the city staff has the last word. The record reflects that the City Planning and Zoning Commission and the City Council have the authority and often do reject the recommendations of the staff. While it obviously costs more money to prepare and file a formal zoning application than to make preliminary negotiations for such a filing, such a final application was required if appellants were to be in a position to take advantage of the contingency in the agreement allowing them to withdraw if zoning was not obtained. This was not an unanticipated "impracticability caused by extreme or unreasonable difficulty or expense" so as to avail appellants of the doctrine of "commercial frustration" enunciated in *Garner v. Ellingson, supra.*

The judgment is affirmed.

DONOFRIO, P. J., and OGG, J., concur.