575 P.2d 1245

**MOBILE HOME ESTATES, INC., an Arizona Corporation, Appellant,**

v.

**LEVITT MOBILE HOME SYSTEMS, INC., a corporation, Appellee.**

**No. 13163.**

Supreme Court of Arizona, In Division.

Feb. 23, 1978.

Jones, Teilborg, Sanders, Haga & Parks, P. C. by John C. Gemmill, David L. Haga, Jr., and Joseph L. Moore, Phoenix, for appellant.

Jennings, Strouss & Salmon by Steven C. Lester and Gary L. Stuart, Phoenix, for appellee.

CAMERON, Chief Justice.

Plaintiff, Mobile Home Estates, Inc., sued for rescission of a contract entered into with defendant Levitt Mobile Home Systems, Inc., and for restitution of money paid under the contract. The trial court granted Levitt's motion for summary judgment and plaintiff appeals. We take jurisdiction pursuant to Rule 47(e)(5), Rules of the Supreme Court, 17A A.R.S.

We must answer three questions on appeal:

1. Was the contract as modified fully executed?
2. If so, does the doctrine of commercial frustration apply to a fully executed contract?
3. May A.R.S. § 10–482, requiring foreign corporations to comply with A.R.S. § 10–481 before doing business in this state, be used to rescind a fully executed contract?

Resolving all fact questions in favor of the person against whom the motion for summary judgment was granted, *Hall v. Motorists Insurance Corporation*, 109 Ariz. 334, 509 P.2d 604 (1973), the following is necessary for a determination of this matter on appeal.

On 30 December 1971, the parties entered into a sales agreement under which Mobile Home was to purchase 10 factory-produced modular duplex dwelling units from Levitt. The units were to be manufactured at Levitt's plant in California and, in fact, were manufactured prior to May 1972. On 19 May 1972, a new chapter of Arizona law became effective which set up a mechanism for regulating the construction of factory-built buildings, mobile housing and recreational vehicles.[1] Pursuant to authority created by this law, standards were adopted. The units constructed by Levitt did not comply with those standards.

On 30 May 1972, Mobile Home's California counsel wrote a letter to Levitt's representative confirming an apparent agreement between the parties to modify their original contract. The pertinent portions of this letter read as follows:

"Units or components manufactured prior to the effective date of this article shall be exempt from the standards adopted by the director pursuant to this article. * * *" A.R.S. § 44–1713(B) (Supp.1973)

The present version contains a similar provision at A.R.S. § 32–1188(B).

---

1. This body of law, originally found at A.R.S. § 44–1701, et seq., was later repealed. A new version subsequently has been enacted. Its provisions appear at A.R.S. § 32–1172, et seq. The statutes also contained the following provision:

"Dear Mr. Handy:

"Outlined below is my understanding of the agreement between Levitt Construction Systems, Inc., and Mobile Home Estates, Inc.

I. Duplexes

Mobile Home Estates, Inc. (MHE) agreed to purchase ten (10) duplexes from Levitt Construction Systems (LSC) formerly Levitt Mobile Systems.

The duplexes were $16,974.00 each f.o.b. LCS plant. A down payment of $16,974.00 was made. Four duplexes were transported to Mesa, Arizona. Six duplexes are held in the storage area near Orange.

MHE and LCS mutually agree:

(a) MHE will take five (5) duplexes and pay $67,896.00 (4 × $16,974.00 with credit for $16,974.00 down payment). In addition MHE will pay

| | | |
|---|---|---|
| $ 686.00 | freight to storage area (10 units) | |
| 29.00 | storage—(1 unit) | |
| 794.00 | storage—(6 units) | |
| $ 1881.00 | storage to 5/30/72 | |

MHE will pay freight from storage area to Mesa for one (5th) duplex, also any additional storage charge.

(b) LCS keeps five (five) duplexes. MHE will use best efforts to sell these. Storage on these units or further moves (except for MHE account to Mesa) will be at expense of LCS.

    *    *    *    *    *    *

" IV. Summary

There is enclosed with this letter check for

| | |
|---|---|
| $ 67,896.00 | complete purchase price 5 duplexes (including credit and down payment of $16,974.00 for one) |
| 1,881.00 | storage and freight as above |

    *    *    *    *    *    *

        check herewith

V. This is intended to be a monetary summary of all commitments to date between MHE and LCS, including sales agreement of December 30, 1971.

        Very truly yours,
        /s/ W. Gordon Eustice"

On 15 June 1973, Mobile Home filed a complaint in the Maricopa County Superior Court seeking rescission of the sales agreement and restitution of $86,873 paid by it under the agreement for the 5 mobile homes. Mobile Home's amended complaint contains three counts. Count one seeks to rescind the contract because of commercial frustration; Count two seeks to have the contract declared null and void pursuant to A.R.S. § 10–482 for failure of Levitt to qualify to do business in Arizona as a foreign corporation; and Count three alleges that Levitt's failure to qualify to do business under the laws of Arizona constitutes a breach of the parties' contract.

Levitt filed a motion to dismiss with an accompanying memorandum. Affidavits were subsequently filed by both parties in support of their respective positions. Treating the motion to dismiss as a motion for summary judgment, the trial court on 2 December 1975 entered summary judgment in favor of Levitt. Mobile Home appeals.

## WAS THE CONTRACT AS MODIFIED FULLY EXECUTED?

Before we consider the issues of commercial frustration and failure to qualify as a foreign corporation, we must first consider whether, as Levitt alleges, the contract of 30 December 1971 was modified by the letter of 30 May 1972 and fully executed. If it was, the matter can be quickly resolved. If it was not, then we have questions of fact which make the granting of a motion for summary judgment improper.

In an appeal from a summary judgment, we must view all inferences from the evidence in favor of the appellant. *Dollar A Day Rent A Car Systems, Inc. v. Mountain States Telephone and Telegraph Company*, 22 Ariz.App. 270, 526 P.2d 1068, (1974). Summary judgment should not be used in resolving fact issues but to determine whether such issues do in fact exist. *Chanay v. Chittenden*, 115 Ariz. 32, 563 P.2d 287 (1977). However, Rule 56(e), Rules of Civil Procedure, 16 A.R.S., provides:

"56(e). Form of affidavits; further testimony; defense required

" * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may

not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

And we have stated:

"The requirement of Rule 56(e) that 'an adverse party may not rest upon the mere allegations or denials of his pleading, but his response by affidavits * * must set forth specific facts showing that there is a genuine issue for trial,' merely means that where there is before the court uncontroverted, competent evidence from which only one inference can be drawn and the opposing party fails to controvert those facts by affidavit, then summary judgment is proper. * * * "

*Northern Contracting Company v. Allis-Chalmers Corporation*, 117 Ariz. 374, 573 P.2d 65, filed December 19, 1977.

■ Nowhere in the record before us does Mobile Home deny Levitt's factual allegation that the original contract had been modified and, as modified, fully performed by Mobile Home. The letter formalizing the modification was written by Mobile Home's own counsel. Enclosed with the letter was a check for the remaining unpaid price for the 5 units. There is then no fact question to be resolved. The contract of 30 May 1972 modified the contract of 30 December 1971 and, at the time of the suit, had been fully executed.

## COMMERCIAL FRUSTRATION

Mobile Home seeks rescission of the contract on the grounds of commercial frustration. Mobile Home contends that the units constructed by Levitt do not comply with the subsequently adopted standards governing the construction of mobile homes and that such noncompliance would make Mobile Home's intended resale of the units in Arizona difficult if not impossible.

■ The doctrine of commercial frustration is, in appropriate circumstances, a jus-

tification for nonperformance of a contract and is recognized in Arizona. Our Court of Appeals has stated:

"A general definition of 'commercial frustration' has been stated as follows:

'It is well settled that when, due to circumstances beyond the control of the parties the performance of a contract is rendered impossible, the party failing to perform is exonerated.' (citation omitted)."

*Garner v. Ellingson*, 18 Ariz.App. 181, 182, 501 P.2d 22, 23 (1972).

See also *Lloyd v. Murphy*, 25 Cal.2d 48, 153 P.2d 47 (1944) for a good discussion of the doctrine of commercial frustration in a well-reasoned opinion by Justice Traynor.

■ We do not find, however, that the doctrine of commercial frustration is justification for rescission of a fully performed contract:

"The contract, so far as the plaintiff is concerned, was fully performed before the alleged defense arose. The rule relied upon by the defendant applies to executory contracts alone. (citations omitted)" *Kunkel Auto Supply v. Leech*, 139 Neb. 516, 298 N.W. 150, 153 (1941).

And this concept is embodied in the headnote to the section on commercial frustration contained in C.J.S. There, in 17A C.J.S. Contracts § 463(2)(b), at 619, it is stated:

"b. *Commercial Frustration*

"The doctrine of commercial frustration, which is a relatively modern one, and which is applicable only to executory contracts, is that a contract is discharged where its purpose is frustrated and rendered impossible of performance by a supervening event not reasonably foreseeable."

It would be contrary to logic and common sense to hold that a contract was rendered impossible to perform when, in fact, it had already been performed.

## FAILURE TO COMPLY WITH A.R.S. § 10–481

As a second basis for seeking relief, Mobile Home urges that Levitt has transacted

business in this state as a foreign corporation without complying with requirements imposed by A.R.S. § 10–481 and therefore the contract between the parties is void by virtue of the following statutory provision:

> "No foreign corporation shall transact business in this state until it has complied with the requirements of § 10–481, and every act done prior thereto is void." A.R.S. § 10–482.[2]

Levitt does not dispute the allegation that it has not complied with requirements of A.R.S. § 10–481. It does deny, however, that it has done any acts relating to this contract which would constitute the transacting of business in Arizona within the meaning of the above quoted section as it has been judicially interpreted. Because this is a motion for summary judgment, we must, however, assume that Mobile Home's allegation is, in fact, true. Even assuming this fact, however, it does not provide relief for Mobile Home. This court has recognized that:

> " * * * The authority seems to generally be that when contracts entered into by a nonqualifying corporation have been fully executed, that courts will not undo them. (citations omitted)." *Sandia Development Corporation v. Allen*, 86 Ariz. 40, 49, 340 P.2d 193, 199 (1959). See also Annot. at 7 A.L.R.2d 256.

█ A.R.S. § 10–482 is a shield and not a sword. Its provisions may not be used to void a fully executed contract and Mobile Home's reliance thereon is misplaced.

But Mobile Home further contends that Levitt's failure to qualify to transact business in Arizona constitutes a breach of contract. The provision Levitt allegedly breached in failing to qualify to do business in Arizona is found in Section 7 of the 30 December 1971 contract. The pertinent portions of that section read as follows:

"7. *Conditions to Seller's Obligations.*

"7.1 The obligations of Seller under this Agreement are subject to satisfaction of the following conditions, compliance with which or the occurrence of which may be waived in whole or in part by Seller in writing:

\* \* \* \* \* \*

"(d) Seller, after the exercise of due diligence, is *unable* to qualify under the laws of the State of Arizona to transact all aspects of its business contemplated by this Agreement.

"(d) Seller, after the exercise of due diligence, is *unable* to qualify in the State of Arizona to transact business contemplated by this Agreement." (emphasis added)[3]

█ Section 7 of the contract is entitled "conditions to Seller's Obligations." It lists conditions the nonsatisfaction of which excuse the seller's obligation to perform. Nothing in that section may be construed to excuse the *buyer's* obligation to perform or give him a remedy for breach. Levitt's failure to qualify is not a breach, but merely a circumstance providing Levitt with an excuse not to perform. Mobile home may not rely upon this provision to void the fully executed contract.

The trial court's entry of summary judgment is affirmed.

HAYS and GORDON, JJ., concur.

---

**2.** This statute was repealed effective 1 July 1976. Present law provides at A.R.S. § 10–124:

> "B. The failure of a foreign corporation to obtain authority to transact business in this state shall not impair the validity of any contract or act of such corporation, and shall not prevent such corporation from defending any action, suit or proceeding in any court of this state."

**3.** Both of these paragraphs marked "(d)" are contained in the contract.