710 P.2d 469

George O. MATHENY and Marion Matheny, husband and wife, doing business as GDM Ambulance Service, Plaintiffs/Appellants,

v.

GILA COUNTY, a political subdivision of the State of Arizona, Defendant/Appellee.

No. 2 CA–CIV 5323.

Court of Appeals of Arizona, Division Two, Department A.

July 10, 1985.

Review Denied Dec. 3, 1985.

Culbert & De Ninno by David R. Pardee, Globe, for plaintiffs/appellants.

Joe Albo Jr., Gila Co. Atty., Globe, for defendant/appellee.

## OPINION

BIRDSALL, Presiding Judge.

This appeal is from judgment for defendant county releasing it from its obligation under an ambulance service contract due to what the trial court termed impossibility of performance. We affirm.

The appellants Mathenys operated GDM Ambulance Service and contracted with the county, beginning in 1978, to provide ambulance service for the county's indigent sick. New legislation creating Arizona's Health Care Cost Containment System (AHCCCS) became effective February 8, 1982. The program was to commence in November 1982. On October 5, 1982, the county informed Mathenys that, effective November 5, 1982, it would no longer honor the contract, which had been extended through July 1983. Following refusal of the county to honor a claim under the contract in December 1982, appellants brought this suit in April 1983. Following a hearing in

May 1984, at which a Gila County medical certification officer testified that there were no persons in Gila County *not* qualifying for AHCCCS who would be eligible for county ambulance service, judgment for the county was entered.

We note at the outset that while the judgment appealed from cites impossibility of performance as the doctrine discharging the contract, both parties cite a similar doctrine, commercial frustration, as the basis for the decision. We believe the doctrine of commercial frustration supports the decision of the trial court.

This doctrine was accepted in Arizona in *Garner v. Ellingson*, 18 Ariz.App. 181, 501 P.2d 22 (1972). There a lease had been executed by the parties, but the lessees were advised that before they could make use of the premises for their intended use, they would have to install certain fire protection in adjoining premises also owned by the lessors. Because the lessors refused to make these improvements, the court of appeals held the agreement had been commercially-frustrated and the lessees were relieved of their obligations under the lease. The court adopted the following general definition of commercial frustration:

> " 'It is well settled that when, due to circumstances beyond the control of the parties the performance of a contract is rendered impossible, the party failing to perform is exonerated.' *Whelan v. Griffith Consumers Company*, 170 A.2d 229, 230 (D.C.1961)." 18 Ariz.App. at 182, 501 P.2d at 23.

The court then went on to say:

> "It should be noted that the doctrine of commercial frustration is not necessarily limited to strict impossibility, but includes impracticality caused by extreme or unreasonable difficulty or expense. *Whelan*, supra.

A thorough discussion of the doctrine and its applicability is set forth in *Lloyd v. Murphy*, 25 Cal.2d 48, 153 P.2d 47 (1944). Justice Traynor, in a well-reasoned opinion, states:

> 'The question in cases involving frustration is whether the equities of the case, considered in the light of sound public policy, require placing the risk of a disruption or complete destruction of the contract equilibrium on defendant or plaintiff under the circumstances of a given case ... and the answer depends on whether an unanticipated circumstance, the risk of which should not be fairly thrown on the promisor, has made performance vitally different from what was reasonably to be expected (6 Williston, op. cit. supra, § 1963, p. 5511; Restatement, Contracts, § 454.' 153 P.2d at 50.

As to the condition precedent which must exist before the doctrine can be applied, Justice Traynor continues as follows:

> 'The purpose of a contract is to place the risks of performance upon the promisor, and the relation of the parties, terms of the contract, and circumstances surrounding its formation must be examined to determine whether it can be fairly inferred that the risk of the event that has supervened to cause the alleged frustration was not reasonably foreseeable. If it was foreseeable there should have been provision for it in the contract, and the absence of such a provision gives rise to the inference that the risk was assumed.' 153 P.2d at 50.

The doctrine of frustration has been severely limited to cases of extreme hardship so as not to diminish the power of parties to contract, and, in addition, the courts in applying the doctrine have required proof from the party seeking to excuse himself that the supervening frustrating event was not reasonably foreseeable. *Lloyd v. Murphy*, supra." 18 Ariz.App. at 182–83, 501 P.2d at 23–24.

Our supreme court, citing *Garner v. Ellingson*, said "The doctrine of commercial frustration is, in appropriate circumstances, a justification for nonperformance of a contract and is recognized in Arizona," *Mobile Home Estates, Inc. v. Levitt Mobile*

*Home Systems, Inc.*, 118 Ariz. 219, 222, 575 P.2d 1245, 1248 (1978). The high court refused to apply the doctrine in that case because the contract was fully performed.

In this appeal the Mathenys argue that:

1) AHCCCS did not destroy the value of the contract, and

2) The appellee county offered no evidence that AHCCCS was unforeseeable.

They also contend there was no evidence that the county sought to salvage the value of the contract and that the county was guilty of laches. These latter arguments were not made in the trial court and we cannot consider them on appeal.

■ Concerning the first issue, the appellants urge that there are still persons who are eligible for county assistance, but not for AHCCCS. In other words, they fall within a notch created by different standards of eligibility for the two systems, that is, county and AHCCCS. The only evidence shows there is no notch group in Gila County.

■ The appellants point out that the contract also required them to transport deceased indigent persons for autopsy. Therefore, they argue, the contract was still of value to Gila County. Although the contract did so provide, we believe any fair reading of its terms shows the principal undertaking and the reason for the contract was to provide ambulance service for the indigent sick residents of the county. Because there were no longer any indigent sick persons to be transported, we believe the purpose of the contract was substantially frustrated. The doctrine is not limited to strict impossibility, *Garner v. Ellingson*, supra. The transporting of the deceased was a secondary, incidental service required to be performed under the agreement. Cf. *Stratford, Inc. v. Seattle Brewing & Malting Co.*, 94 Wash. 125, 162 P. 31 (1916).

■ Turning to the second argument, the trial court found that the enactment of AHCCCS could not have reasonably been anticipated by the parties at the time they entered into the contract in July 1980. The appellants' argument that there was no evidence that this was not foreseeable overlooks the fact that it was new legislation which completely changed the procedure and responsibility for care of the indigent sick in Arizona. Assuming, arguendo, that the enactment of any legislation is foreseeable, we do not believe sweeping revision of the laws pertaining to such an important need as health care for the indigent can be labeled foreseeable. Although there is no indication that the trial court took judicial notice of the fact that Arizona had failed for several years to effectively provide some form of Medicaid, we believe the trial court could have done so. Rule 201, Rules of Evidence, 17A A.R.S. (Supp. Pamph. 1984) states:

"(b) A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court . . .

(c) A court may take judicial notice, whether requested or not."

Even if the trial court did not take judicial notice of the history of Medicaid legislation in Arizona, we may do so on appeal. "Appellate courts will often utilize the doctrine to add facts necessary to affirm the trial court." Udall & Livermore, Law of Evidence, § 151 (2d ed.1982), citing *State v. Hunt*, 118 Ariz. 431, 577 P.2d 717 (1978); *Hovatter v. Shell Oil Co.*, 111 Ariz. 325, 529 P.2d 224 (1974); *Southwestern Freight Lines, Ltd. v. Floyd*, 58 Ariz. 249, 119 P.2d 120 (1941); *State v. McGuire*, 124 Ariz. 64, 601 P.2d 1348 (App.1978).

We note that ever since 1974, when a system of state funding for the medically needy was enacted by the legislature and left without funding appropriations for three years, no acceptable and workable plan was ever adopted which could be put into effect. Medicaid-type legislation was vetoed by Governor Bruce Babbitt in 1979 and 1981, the governor finding that the plans so digressed from federal standards as to be unacceptable. In 1980, the year the contract in issue was signed, no state-

funded plan passed either house of the legislature, and it was because of the annual loss of funds to federal Medicaid programs, without receiving any benefit of the funds within Arizona, that the governor made health care cost containment a focal point of his message to the legislature in 1981. The 1981 legislative effort having again fallen short and been vetoed, the governor called a special session for November 9, 1981, at which the present AHCCCS plan was adopted (see, inter alia, former Chapter 21 to Title 36, numbered A.R.S. §§ 36–2171 to 2180, Vol. 11A, Supp. Pamph. 1984, at 332–36; Session Laws 1979, at 998–99; Journal of the House, 34th Legislature, Second Regular Session, 1980; Journal of the Senate, 34th Legislature, Second Regular Session, 1980; Session Laws 1981, First Regular Session at 1265–66, Fourth Special Session at 1417–41).

These facts compel our conclusion that it was impossible to foresee in July 1980 that legislation would become law causing the contract to be commercially frustrated and useless to the county.

Affirmed.

HOWARD and FERNANDEZ, JJ., concur.