586 P.2d 978

**MOHAVE COUNTY, a Political Subdivision of the State of Arizona, Appellant,**

v.

**MOHAVE–KINGMAN ESTATES, INC., an Arizona Corporation, Appellee.**

**No. 13571.**

Supreme Court of Arizona, In Division.

Nov. 6, 1978.

 .
 
 

 

Leibsohn, Eaton, Gooding & Romley by Jeffrey M. Proper, Phoenix, for appellant.

Blake, Colter, Flickinger & Daudet by James H. Colter, Phoenix, for appellee.

HAYS, Justice.

This is an action for ejectment, quiet title, declaratory judgment and specific performance. Plaintiff-appellant, Mohave County (County), a political subdivision of the State of Arizona, brought suit to recover 264.8 acres of land, alleging that the defendant-appellee, Mohave-Kingman Estates, an Arizona corporation, had breached the terms of a written agreement. We have jurisdiction under 17A A.R.S. Supreme Court Rules, rule 47(e). We have included only the facts necessary to a resolution of this case on appeal.

In late 1961 the County decided to sell some of its property. Pursuant to A.R.S. § 11–251(9), the County published a Notice of Public Auction setting forth a description of the property and the terms and conditions required to be fulfilled by the purchaser. Publication commenced on December 21, 1961, and ended January 25, 1962. Thereafter, on January 29, 1962, the County sold the property to Guy Rutherford and William Welsh, predecessors in interest of the defendants.

The Notice of Public Auction had listed five specific conditions to be performed by the buyer, and these terms and conditions of sale were confirmed in an agreement executed by the County and Rutherford and Welsh on June 18, 1962. These conditions required the defendants to:

1) rehabilitate the swimming pool;
2) provide improved streets, sewers and water service for a minimum of 120 housing lots;
3) demolish the existing recreation hall; remove where necessary existing concrete slabs; remove existing fences around the swimming pool; grade and clean up the area;
4) erect and reconstruct a new recreation center, including an office and laundromat; and
5) landscape the general area of 120 housing lots.

These improvements were estimated to cost approximately $150,000. This original agreement further provided that time was of the essence, and that in the event these

420

improvements were not completed within three years, the party or parties in whom title was vested had to reconvey to the County all lots and parcels undeveloped and unsold, free and clear of all encumbrances.

On August 14, 1962, the purchasers, Rutherford and Welsh, conveyed their interest in the property to the defendant corporation. The County and Rutherford and Welsh amended the original agreement on May 6, 1963, even though Rutherford and Welsh were no longer the record title owners of the property. The amended agreement secured certain concessions from the Mohave County Board of Supervisors, in particular extending the time for performance to three years from the date on which all necessary approvals had been obtained, thus in effect voiding the "time is of the essence" provision.

The trial court ordered fee title to the property to be vested in the County upon payment by the County of $68,000 to the defendants. The court felt that the County, because of its delay in instituting the lawsuit while the defendants paid taxes on the property, and while the property was appreciating in value, was not entitled to an absolute reconveyance of the property without payment of certain sums of money to the defendants. The County appealed the conditioning of reconveyance of the property on the payment of $68,000, and the defendants cross-appealed the judgment. We are presented with the following issues:

1. whether the trial court erred in concluding that the amended agreement was valid under A.R.S. § 11–251(9);
2. whether the evidence supports an equitable remedy on the grounds that the County was estopped or guilty of laches or has waived its right to seek enforcement of the terms and conditions of the agreement;
3. whether the defenses of impossibility of performance, prevention and commercial frustration are available to counter defendant's breach; and
4. whether A.R.S. § 33–741 applies to the transaction in issue.

I. A.R.S. § 11–251(9)

The County contends that the extension of time granted the defendants by the amended agreement constituted a material change in the terms and conditions of the sale, and therefore, the amended agreement, like the original agreement, had to meet the provisions of A.R.S. § 11–251(9) for sale by public auction. A.R.S. § 11–251 sets forth the powers of the county board of supervisors and subparagraph 9 specifies the conditions under which the board may sell property, real or personal, that it owns. The statute prescribes sale to the highest bidder at public auction after 90 days notice by publication. A.R.S. § 11–251(9).

As a body politic and corporate, A.R.S. § 11–202, the County, in its contracts must act not only within the limits of the power granted it by the legislature, but must also comply with the statutory requirements prescribed by the legislature. Failure to do so precludes enforcement of the contract according to its terms. *Town of Holbrook v. Girand*, 52 Ariz. 291, 296, 80 P.2d 695, 697–98 (1938). By the same token, the county board of supervisors may exercise no powers except those specifically granted by statute and in the manner fixed by statute. *State Board of Control v. Buckstegge*, 18 Ariz. 277, 158 P. 837 (1916). Actions of the Board accomplished by a method unrecognized by statute have been described as "without jurisdiction and wholly void." *Id.*

The purpose of the competitive bidding statute is to prevent favoritism, fraud and public waste by encouraging free and full competition. In general, public authorities cannot contract with the lowest bidder for terms which were not included in the bidding specifications. *E. g., W. R. Aldrich & Co. v. Gravity Drainage Dist. No. 1 of Rapides Parish*, 238 La. 190, 114 So.2d 860 (1959). Nor may they evade this rule by a supplemental contract with the successful bidder embodying changes in the plans or specifications after having entered into a legal contract pursuant to the advertised plans and specifications. *E. g., Hanna v.*

*Board of Education of Wicomico County,* 200 Md. 49, 87 A.2d 846 (1952).

In *Neil B. McGinnis Equipment Co. v. Riggs,* 4 Ariz.App. 556, 422 P.2d 187 (1967), the Court of Appeals held that the repurchase provision in a contract for the sale of motor graders to Maricopa County was a sale of property that had to be accomplished in the manner set forth by A.R.S. § 11–251(9). The Court of Appeals aptly characterized A.R.S. § 11–251(9) as "mandatory" and exclusive. 4 Ariz.App. at 558, 422 P.2d at 189. In the instant case, since we find that the extension of time was a material provision, the amended agreement had to be let according to the statute. We therefore hold that the amended agreement was void for failure to conform to A.R.S. § 11–251(9).

## II. EQUITABLE DEFENSES

The second major issue raised by the appellant centers on the availability of equitable defenses and remedies. The County contends that not only is the defendant incapable of asserting the equitable defenses of estoppel, laches and waiver against a sovereign entity, but the lack of evidence of detrimental reliance or injury precludes the court from fashioning an equitable remedy.

In general, equitable defenses, such as estoppel and laches, will not lie against the state, its agencies or subdivisions in matters affecting governmental or sovereign functions. *George v. Arizona Corporation Comm'n,* 83 Ariz. 387, 392, 322 P.2d 369, 372 (1958); *Maricopa County v. Cities & Towns of Avondale, Etc.,* 12 Ariz. App. 109, 113, 467 P.2d 949, 953 (1970). On the other hand, when the state, agency or municipality acts within its proprietary capacity, these equitable defenses are available. *Sumid v. City of Prescott,* 27 Ariz. 111, 116, 230 P. 1103, 1105 (1924); *Reeves v. City of Phoenix,* 1 Ariz.App. 157, 158, 400 P.2d 364, 365 (1965). The crucial element of both doctrines is injury or detriment to the defendant. In the instant case, the County's silence has not misled the defendants into believing that they had a grace period in which to complete the improvements.

What little work the defendants did perform, they completed within one year after the agreement and amended agreement had been executed. Admittedly, after the time for performance had expired, the defendants continued to pay taxes on the property, but they made no further efforts to complete the improvements as they had agreed. Certainly, the payment of the property taxes was not conditioned on the County's action or inaction. More importantly, however, the mere passage of time will not bar an action without a change of position induced by the inaction of the plaintiff. *Felix v. Superior Court of the County of Pima,* 92 Ariz. 247, 375 P.2d 730 (1962).

Waiver is also an equitable defense, one closely related to estoppel. *State v. Goff,* 99 Ariz. 79, 407 P.2d 55 (1965). Waiver is an intentional relinquishment of a known right. *Murphey v. Valenzuela,* 95 Ariz. 30, 386 P.2d 78 (1963). There is some authority in Arizona for the proposition that a waiver, particularly a waiver of a contract provision, must be supported by consideration or at least by the equivalent of estoppel. *Guarantee Title & Trust Co. v. Babbitt Bros. Trading Co.,* 47 Ariz. 47, 53, 53 P.2d 734, 736 (1936); *Davis v. Standard Accident Ins. Co.,* 35 Ariz. 392, 398, 278 P. 384, 386 (1929). Later cases, however, have continually emphasized the intentional relinquishment aspect of waiver without mention of consideration. *E. g., Murphey, supra*; *Wells-Stewart Construction Co. v. General Ins. Co. of America,* 10 Ariz.App. 590, 461 P.2d 98 (1969). In any event, there is nothing in the record to indicate clearly and convincingly an intention to effect a waiver. *Jones v. Industrial Commission,* 1 Ariz.App. 218, 401 P.2d 172 (1965). Nevertheless, the defendants argue that the enactment of a zoning ordinance permitting a higher zoning use furnished consideration to the County. We have difficulty in understanding how the *defendants* furnished this consideration to the County as the record is bare of any evidence from which the slightest inference can be drawn that the enactment of the zoning ordinance was a *bargained for exchange. Yuma Na-*

*tional Bank v. Balsz*, 28 Ariz. 336, 343, 237 P. 198, 200 (1925).

■ Having determined that the evidence does not support any of the equitable defenses asserted by the defendants, we conclude that there is no basis to sustain the award of $68,000. Mere appreciation in market value of the land is not enough to vindicate this judgment. The contract itself, however, did provide for a refund of all moneys paid thereon by the defendants in the event of reconveyance. The findings of fact disclose that, in addition to the $13,250 purchase price, the defendants have expended $21,492 for demolition and administrative expenses, bringing the total moneys paid by them to $34,742. We therefore hold that the defendants are entitled to the sum of $34,742. The judgment of the trial court is modified accordingly.

## III. PERFORMANCE

On cross-appeal the defendants challenge the conclusion of the trial court that they breached the original agreement and amended agreement by failing to complete the improvements within the time specified. The defendants qualify their assertion of performance with the admission that certain conditions were not fulfilled; however, they allege that by rezoning the property the County precluded performance. Consequently, as a matter of law, they should not be held to perform when the adverse party has substantially interfered with that performance. *E. g., Security National Life Ins. Co. v. Pre-Need Camelback Plan, Inc.*, 19 Ariz.App. 580, 509 P.2d 652 (1973). *See Tyson v. Tyson*, 61 Ariz. 329, 149 P.2d 674 (1944).

While we agree with the defendants' proposition of law that it would be inequitable to demand performance from one party when the adverse party interferes and hinders that performance, we find it inapplicable to the case at bar. The trial court made two findings of fact which bear on this issue: 1) that at the time the agreements were executed the property was zoned for residential and commercial use; and 2) that the rezoning plan in 1967 altered the existing zoning from residential and commercial to commercial and manufacturing and required an application for a variance to construct a residential subdivision.

■ We place substantial weight on the fact that the time for performance had already passed when the County enacted the comprehensive zoning plan in 1967. Where the time for performance is material to a contract, failure of one party to perform by the contract deadline warrants treatment of the contract as ended. *Allan v. Martin*, 117 Ariz. 591, 593, 574 P.2d 457, 459 (1978). Furthermore, the change in zoning did not prevent the construction of a residential subdivision, but only required a variance or building permit to proceed. The rule excusing an obligor in a contract from performance when to perform would violate zoning regulations does not apply where the zoning laws permit a variance in the regulations. *Pennsylvania State Shopping Plazas, Inc. v. Olive*, 202 Va. 862, 120 S.E.2d 372 (1961).

Closely intertwined with the argument of prevention, are the defendants' arguments of impossibility of performance and commercial frustration. In regard to the former argument, we again are faced with the fact that the change in the zoning laws did not occur until five years after the original agreement had been entered into. For the reasons stated above, the change in the zoning ordinance did not make performance impossible, any more than it precluded performance.

■ As for the commercial frustration argument, while Arizona recognizes the doctrine of commercial frustration, *Mobile Home Estates, Inc. v. Levitt Mobile Home Systems, Inc.*, 118 Ariz. 219, 222, 575 P.2d 1245, 1248 (1978), we do not see fit to interpret it as a general absolution whenever performance under the contract becomes difficult or expensive. Proper application of the doctrine requires us to examine whether the allegedly frustrating event was reasonably foreseeable. *Garner v. Ellingson*, 18 Ariz.App. 181, 183, 501 P.2d 22, 24 (1972); *Lloyd v. Murphy*, 25 Cal.2d 48, 54,

153 P.2d 47, 50 (1944). In evaluating foreseeability, we find relevant those cases holding that, in the absence of an express provision in the contract of sale, the purchaser of real estate bears the risk of loss from a change in the zoning regulations. *E. g., DiDonato v. Reliance Standard Life Ins. Co.*, 433 Pa. 221, 249 A.2d 327, 39 A.L. R.3d 357 (1969); 6 Corbin, *Contracts* § 1361 (1962). Accordingly, we find that the doctrine of commercial frustration does not apply to the instant case because the risk of a change in the zoning ordinances was an event properly foreseeable by the defendants, and one which they could have contracted against. Thus, we affirm the conclusion of the trial court that the defendants breached the agreement by not completing the improvements within the times set forth therefor.

### IV. A.R.S. § 33–741

Lastly, the defendants contend that a forfeiture cannot be declared because the County has failed to give notice or otherwise follow the requirements of A.R.S. § 33–741 (forfeiture of interest of purchaser in default under contract for conveyance of real property). This statute provides for a grace period in which to cure a default under a contract for conveyance of real property. The time to cure so as to preclude forfeiture varies in length from 30 days with payment of less than 20% of the purchase price to nine months if 50% or more of the purchase price has been paid. A.R.S. § 33–741.

■ Clearly, this statute contemplates the typical land contract with installment payments. Against such a background we have no difficulty in construing the reference to the "purchase price" to mean "cash purchase price." Although a literal reading of the statute might lead to the conclusion that a grace period of nine months extends to those cases in which all of the purchase price has been paid, such a construction does injustice to the plain meaning of the statute. We therefore hold that A.R.S. § 33–741 has no application to cases, such as the one at bar, in which the purchaser has paid 100% of the cash purchase price.

■ Furthermore, we are of the opinion that if the defendants wish to base their defense on a particular statute, then that statute must be cited specifically in their answer in accordance with the rule that affirmative defenses must be pleaded specifically. 16 A.R.S. Rules of Civil Procedure, rule 8(d).

■ In sum, although the law disfavors forfeitures, when it clearly appears from the terms of the contract that the parties have agreed to a contract that will result in a forfeiture, the courts will enforce it. *Branker v. Bowman*, 62 Ariz. 214, 220, 156 P.2d 898, 901 (1945).

We affirm the judgment of the trial court as modified and remand for proceedings not inconsistent herewith.

CAMERON, C. J., and HOLOHAN, J., concur.