139 Ariz. 494 (1983)
679 P.2d 517
CHICAGO TITLE INSURANCE COMPANY, a Missouri corporation, Plaintiff-Appellant,
v.
RENAISSANCE HOMES, LTD., an Arizona corporation; and Bruce D. Schoenberger, Defendants-Appellees.
No. 1 CA-CIV 6051.
Court of Appeals of Arizona, Division 1, Department B.
October 20, 1983.
Reconsideration Denied January 1, 1984.
*495 Head, Gullinson & McCoy by Robert D. McCoy, Phoenix, for plaintiff-appellant.
Marton, Halladay & Hall, P.A. by Kraig J. Marton, Phoenix, for defendants-appellees.
OPINION
GREER, Judge.
This matter arises from Renaissance Homes, Ltd.'s, (Renaissance) refusal to perform on a real estate agreement executed as a result of its successful bid to purchase a parcel of land from the State of Arizona. The determinative issue on appeal is whether the amended agreement between the state and Renaissance amounted to a substantial and material change from the terms of the bidding requirements announced to the public so that the agreement is void for failure to comply with the state's competitive bidding statutes. We find there was a substantial and material change and therefore affirm the judgment of the trial court.
The facts of this case are not in dispute. In 1979, the Arizona Department of Transportation gave notice that it would sell a parcel of property at public auction. The auction was advertised by newspaper and pamphlet for December 12, 1979. The notice stated that the successful bidder would be required to pay $500 as an initial deposit and also pay 20% of the purchase price as a down payment before the close of escrow. The notice further stated that the buyer would have thirty days from notice of approval of the sale to close escrow.
On the day of sale, the auctioneer was asked whether the thirty day term within which to close escrow could be extended. He replied that "the management of the Arizona Department of Transportation would consider requests for extension of time and might, or might not, grant such extensions depending on the circumstances."
Appellee Renaissance Homes Ltd. (Renaissance) was the successful bidder, bidding one million, five-hundred thousand dollars ($1,500,000.00). The bid was accepted by the Department by letter dated December 20, 1979, which noted that the buyer had thirty days from the date of the letter to close escrow.
An escrow was set up with appellant Chicago Title Insurance Company (Chicago Title). For various reasons not relevant here, Renaissance sought a thirty day extension, which was agreed to without further consideration. Renaissance thereafter requested a second extension for ninety days, which was agreed to, but only after Renaissance agreed to deposit $15,000 as earnest money in escrow. Renaissance subsequently had a dispute with the Department of Transportation and withdrew the $15,000, which evidently had not been sufficiently restricted by Chicago Title. The state eventually assigned its claim for *496 the $15,000, as earnest money forfeited for breach of contract, to Chicago Title.
Chicago Title filed suit against Renaissance and its president, Bruce Schoenberger, to recover the $15,000. Chicago Title's suit is based on the assignment from the state and not on its capacity as escrow agent. Appellees filed a motion for summary judgment, which was granted by the trial court. Formal judgment was entered, from which Chicago Title timely appealed.
The issue is whether the extension agreement, in consideration of which appellee put down the $15,000, was void as being a substantial or material deviation from the call for bids, and thus in violation of the applicable competitive bidding statutes. Chicago Title argues both that the deviation was not material, and that at any rate, statements regarding extensions by the auctioneer at the sale prevented prejudice to any bidder from the deviation. We disagree.
In order to determine whether the extension agreement is void, it is necessary to examine the relevant statutes. A.R.S. § 28-1865(G) provides:
The director [of Transportation] may dispose of real property ... when he determines that it is no longer needed or used for transportation purposes. .. . Such conveyance shall be made to the highest and most responsible bidder at a public sale held for that purpose. Such sale may be made for cash or on terms of not less than twenty per cent down with balance payable in annual installments for ten years, the unpaid balance thereof to bear interest at the rate of six percent per annum....
Notice of sale is provided by A.R.S. § 37-237:
Notice of sales of state lands shall be by advertisement, stating the time, place and terms of the sale and a full description of the land....
A.R.S. § 37-231 provides that: "All state lands, ... shall be subject to appraisal and sale as provided in this title." Finally, A.R.S. § 37-249 provides: "A sale made by mistake or not in accordance with law, or obtained by fraud, is void...."
These statutes are commonly referred to as competitive bidding statutes. The purpose of the statutes "is to prevent favoritism, fraud and public waste by encouraging free and full competition." Mohave County v. Mohave-Kingman Estates, Inc., 120 Ariz. 417, 420, 586 P.2d 978, 981 (1978). The general rule is that a public authority may not contract with the lowest bidder for terms not included in the bidding specifications. Id. Even if the original contract is proper, the parties may not evade the rule by making a supplemental contract which embodies changes to the bidding specifications. Id.
Although no prior Arizona case discusses the statutes at hand, the Arizona Supreme Court has considered a similar statute applying to sale of land by the counties. A.R.S. § 11-251.[1] In Mohave County v. Mohave-Kingman Estates, the county issued a notice of public auction which required the buyer to make certain improvements to the real estate within three years, or else the buyer would have to reconvey the realty to the county. The notice specifically made time of the essence. Although the original contract between the successful bidder and the county followed the *497 terms of the notice, an amended agreement extended the time for the buyer to make the improvements to three years from the date on which all necessary approvals were obtained. The court noted that the extension had the effect of voiding the "time is of the essence" provision. The court held:
In the instant case, since we find that the extension of time was a material provision, the amended agreement had to be let according to the statute. We therefore hold that the amended agreement was void for failure to conform to A.R.S. § 11-251(9).
120 Ariz. at 421, 586 P.2d 978. See also Neil B. McGinnis Equipment Co. v. Riggs, 4 Ariz. App. 556, 422 P.2d 187 (1967). Cf. Singh v. State Land Commissioner, 80 Ariz. 343, 297 P.2d 930 (1956) (timely amended bid not void where made by letter rather than on government form).
Appellees argue that Mohave County is not on point because there is no "time is of the essence" clause in the notice of auction here. While we agree that Mohave County found there was a material deviation because the amended agreement violated the time of the essence clause, it does not follow that an extension agreement may not be a material change where there is no such clause. A "time is of the essence" clause merely operates to give a minor breach as to timely performance the effect of a major breach, but untimely performance may still be a material deviation in and of itself in the absence of such a clause. See Zancanaro v. Cross, 85 Ariz. 394, 339 P.2d 746 (1959). Therefore, Mohave County remains pertinent authority, although it is certainly not dispositive.
Whether a deviation is material is a question of law where the evidence is clear and undisputed. See Mohave County v. Mohave Kingman Estates. In Campbell v. Territory, 14 Ariz. 109, 118, 125 P. 717 (1912), our supreme court defined material as "something of solid or weighty character; substantial; of consequence; not to be dispensed with". In Little v. Valley National Bank of Arizona, 650 F.2d 218, 222 (9th Cir.1981), a securities fraud case, the court stated that, "[f]acts are considered material if there is a substantial likelihood that an ordinary investor would have considered them important in deciding whether or not to purchase the securities." We believe there is a substantial likelihood that an ordinary bidder at the public sale held in this case would have considered a 120 day extension in the time for down payment by the buyer to be a substantial matter in deciding whether, and how much, to bid at the sale. Such a deviation between the notice and the actual agreement certainly does not promote the sale to the "highest and most responsible" bidder, as mandated by A.R.S. § 28-1865(G).
Appellant also argues that the deviation from the original bidding requirements did not result in prejudice to any bidder because the auctioneer told the bidders that requests for extension would be considered, and might be granted. We disagree.
First, we note that the premise upon which Chicago Title's position is based is fallacious. It assumes that all prospective bidders were present at the auction to hear the comments made by the auctioneer. It is quite likely, however, that a number of prospective bidders did not attend the auction because they decided they could not comply with the printed bidding requirements. It is of course impossible for us to determine on appeal whether any such prospective bidders exist. But this is precisely the problem the competitive statutes are aimed at. It is unfair to publicize one set of bidding or purchase requirements and thereafter amend them to favor those persons who decide to attend the auction. It is entirely possible the state would have received a substantially higher bid from someone who could comply with the amended requirements, but not the printed requirements.
*498 We also point out that even if all prospective bidders did attend the auction, they did not have notice that the requirements would be changed because the auctioneer's statement really did not amount to an alteration of the bidding requirements.[2] At best, the auctioneer equivocated on the question posed. Thus, those in attendance did not have notice that the specific written requirements would in fact be altered by the state upon request.
In conclusion, the state had no statutory authority to enter into the amended agreement extending the close of escrow, and therefore that extension agreement is void. See Mohave County, supra., Merrick v. Rottman, 135 Ariz. 594, 663 P.2d 586 (Ariz. App. 1983); A.R.S. § 37-249. Therefore, Chicago Title, as assignee of the state, cannot maintain an action seeking to recover the $15,000 paid by Renaissance as consideration for the void extension agreement. A void contract is one which never had any legal existence or effect, and such a contract cannot in any manner "have life breathed into it." National Union Indemnity Co. v. Bruce Bros., Inc., 44 Ariz. 454, 464, 38 P.2d 648 (1934).
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
FROEB, P.J., and GRANT, J., concur.
NOTES
[1] The Board of Supervisors, ... may:

. . . ..
9. Sell at public auction, after thirty days' previous notice given by publication in a newspaper of the county, stating the time and place of the auction, and convey to the highest bidder, for cash or contract of purchase extending not more than five years from date of sale and upon such terms and conditions and for such consideration as the board shall prescribe, any property belonging to the county which the board deems advantageous for the county to sell, or which the board deems unnecessary for use by the county, ... The notice regarding the sale of real property shall be published in the county where the property is situated and may be published in one or more other counties, and shall contain, among other things, the appraised value, the minimum acceptable sale price, and the common and legal description of the real property.
[2] Although not relevant to whether those in attendance had notice that the state would alter the bidding requirements, the general rule is that written bidding requirements cannot be varied by verbal statements of the auctioneer at the time of the sale. See, e.g., Fontenot v. Garland, 352 So.2d 251 (La. App. 1977); Whitfield v. May, 19 Tenn. App. 431, 89 S.W.2d 764 (1935); 7A C.J.S. Auctions and Auctioneers, § 9(b) (1980).