891 P.2d 889

**ARIZONA BOARD OF REGENTS, For and on Behalf of the UNIVERSITY OF ARIZONA, a political subdivision of the State of Arizona, Plaintiff, Defendant–Appellee, Cross–Appellant,**

v.

**MAIN STREET MESA ASSOCIATES, an Arizona general partnership, and Main Street Mesa Associates, a joint venture, Defendant, Plaintiff–Appellant, Cross–Appellee.**

No. 1 CA–CV 91–0499.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 16, 1994.

Review Denied March 21, 1995.

Udall, Shumway, Blackhurst, Allen & Lyons, P.C. by David K. Udall and Gregory L. Miles, Mesa, for appellee/cross-appellant.

Paul G. Rees, Jr., P.C. by Paul J. Rees, Jr., Tucson, for appellant/cross-appellee.

## OPINION

GERBER, Judge.

Appellant/Cross–Appellee Main Street Mesa Associates (MSMA), an Arizona part- nership, appeals from the trial court's grant of summary judgment finding that MSMA's bid to purchase public land was defective as a matter of law and therefore vitiated the en- tire transaction. Appellee/Cross–Appellant Arizona Board of Regents (ABOR) cross- appeals from the trial court's denial of its request for attorneys' fees and costs. We previously consolidated these appeals. For the following reasons, we affirm the trial court's grant of summary judgment and re- verse and remand its denial of attorneys' fees and costs.

### MSMA'S APPEAL

#### Background

In 1985, ABOR decided to sell 95 acres of a 110 acre tract of state land it held in Mesa known as the Mesa Experimental Farm (the Farm). The University of Arizona (the Uni- versity) conducted the sale as the agent of ABOR. A legal notice was published in "The Arizona Republic" and "The Phoenix Ga- zette" for ten successive weeks giving details about the time, place and terms of the sale. *See* A.R.S. § 37–237.

On April 9, 1986, the University held a public auction to accept bids for the Farm. *See* A.R.S. § 37–236. The University had to sell the Farm for the highest and best bid at the auction. *See* A.R.S. § 37–238. No bid- ders appeared at this first auction. A second auction was held on May 20, 1986, and MSMA was the only bidder to attend. MSMA entered a bid in a document entitled "Proposal to Purchase 95 Acres of the Mesa Experimental Farm." MSMA tendered checks in the amount of $100,000 as earnest money to ABOR at the time of the auction. The next day, MSMA sent the University a letter to clarify certain business points in the proposal.

For the next three and one-half months, MSMA and the University held extensive negotiations over the terms of an agreement without any execution of contract documents.

At an open ABOR meeting on September 5, 1986, ABOR resolved to draft an escrow agreement in connection with the sale of the Farm and further resolved to consider MSMA's bid at its next meeting. MSMA

rejected an initial set of escrow instructions because it felt the instructions contained terms which were not agreed upon. A second set of instructions was prepared but also never signed.

At the next open ABOR meeting on October 10, 1986, MSMA's bid was formally considered and rejected. Subsequently, ABOR filed an action seeking to quiet title to the Farm. MSMA filed an action seeking specific performance of the purported contract, damages and other relief.

The trial court recognized that the Farm was public land and had to be sold pursuant to competitive bidding statutes applicable to the sale of state lands. The trial court concluded that the terms controlling the sale were those published in the legal notice. In its minute order of April 16, 1990, the trial court found that the law required that the bid, at a minimum, contain the following provisions:

1. For the purchase of 110 gross acres with 15 acres to be excluded and with the location of that 15 acres negotiable so long as there was ingress and egress to the 15 acres.

2. For a minimum purchase price of $12,200,000.00.

3. That the bidder would deposit $610,000.00 earnest money with the ABOR office in Phoenix within twenty-four (24) hours of the person conducting the public auction declaring that as of the date of the public auction (here, May 20, 1986), the bidder had the highest and best bid.

4. That if the bid was not for cash but was a "credit sale", then the bidder would deposit the balance of the down payment of $3,050,000.00 along with a signed Note and Deed of Trust acceptable in form by the ABOR.

5. That the terms of the Note would provide that the balance of $8,540,000.00 bearing interest of 12% per annum would be paid in at least annual installments and would be paid in full in three (3) years.

6. That an escrow would be opened after notification from the ABOR of acceptance of the bid and that the escrow would close not later than thirty (30) days after notification from the ABOR of acceptance of the bid.

7. That the bid would remain irrevocable for ninety (90) days after the day of the public auction (here the 90th day would be August 18, 1986) for evaluation by the University.

The trial court also stated in the same minute order that MSMA's bid as explained in its initial proposal of May 20, 1986 and the clarifying letter of May 21, 1986 was not in substantial conformance with the legal notice and complied with it only regarding 1) a purchase price of $12,200,000.00, 2) for 95 acres of the property, 3) with a down payment of $3,660,000.00 and 4) the balance payable in not more than three years.

MSMA's letter of May 21 clarified certain aspects of the bid and specifically outlined the following:

1. Immediate payment of $100,000.00 in earnest money [in personal checks]. An additional $510,000.00 to be deposited on signing of "mutually acceptable purchase agreement."

2. Bid subject to contingency of a feasibility study in which MSMA would have 30 days after receipt of title report, survey, and a designation of the 15 acres ABOR was to retain to decide whether the property was suitable for its purposes.

3. Bid subject to contingency that MSMA have 9 months after conclusion of feasibility study to seek zoning suitable to MSMA and that such zoning be obtained.

4. All principal payments, including the down payment would apply toward the release of property from the lien of the ABOR's carryback Deed of Trust.

The trial court found no genuine issue of material fact and granted ABOR's motion for summary judgment, holding that as a matter of law MSMA's bid was void *ab initio* because it materially deviated from the terms in the legal notice. The court quieted title in the Farm to ABOR. MSMA appealed.

*Issues*

MSMA raises the following issues: I) whether the trial court erred in finding MSMA's bid contained material deviations from the terms in the legal notice, and II) whether ABOR is estopped to deny a bid that meets the minimum terms in the legal notice.

*Discussion*

I

The sale of state lands is governed by statutes known as the competitive bidding statutes. *See* A.R.S. §§ 37–231 to 37–261. The purpose of the competitive bidding statutes is to prevent favoritism, fraud and public waste by encouraging free and full competition. *Mohave County v. Mohave–Kingman Estates, Inc.*, 120 Ariz. 417, 420, 586 P.2d 978, 981 (1978).

■ In *Mohave County*, the supreme court stated the general rule that a public authority may not contract with the lowest bidder for terms not included in the bidding specifications. *Id.* (citing as an example *W.R. Aldrich & Co. v. Gravity Drainage Dist. No. 1 of Rapides Parish*, 238 La. 190, 114 So.2d 860 (1959)). In *Aldrich*, the public authority was required by statute to award the contract to the lowest responsible bidder, but even the lowest bidder could not be awarded a contract with terms that materially departed from the bidding specifications. *Id.* 114 So.2d at 862–63. Here, since ABOR is required by A.R.S. section 37–236 to sell the Farm to the highest and best bidder, the same principle applies: the public authority may not contract, even with the *highest* bidder, for terms not included in the bidding specifications.

■ An indispensable component in the sale of public lands is the fixing of definite terms to which all the competitive proposals alike refer. *See Sulphur Springs Val. Elec. Coop. v. City of Tombstone*, 1 Ariz.App. 268, 271, 401 P.2d 753, 756, *aff'd*, 99 Ariz. 110, 407 P.2d 76 (1965). Unlike some sales of private

property, the sale of public property is controlled by laws that do not allow the parties to haggle over essential terms. "Statutes governing the sale of public property are designed to secure the most beneficial terms for the public body, and the basic philosophy underlying these statutes is that economy must be secured, extravagance avoided, and opportunities for fraud or favoritism suppressed." *Id.* at 272, 401 P.2d at 757. "Consideration of advantages or disadvantages to those bidding for the property must of necessity be secondary to the general welfare of the public." *Id.*

■ A bid containing terms that materially deviate from the terms in the bidding specifications or as required by law can never be the basis for an agreement.[1] The legal notice soliciting bids is really a request for offers. The offers or the bids must conform to the specifications in the notice. Because the law does not allow the public authority to amend these specifications in favor of those bidders attending the auction, a materially deviating bid can never be accepted to form an agreement. Thus, the offer or the bid is void *ab initio* and the public authority must reject it.

We must next determine whether MSMA's bid as a matter of law materially deviated from the specifications in the legal notice.

■ Whether a deviation is material is a question of law where the evidence is clear and undisputed. *Chicago Title Ins. Co. v. Renaissance Homes*, 139 Ariz. 494, 497, 679 P.2d 517, 520 (App.1983). Material is defined as "something of solid or weighty character; substantial; of consequence; not to be dispensed with." *Id.*, (quoting *Campbell v. Territory*, 14 Ariz. 109, 118, 125 P. 717, 721 (1912)). In determining the materiality of the deviation from a bidding specification, the court in *Chicago Title* contemplated whether an ordinary bidder at the public land sale would likely have considered the deviation to be a substantial matter in deciding whether, and how much, to bid. 139 Ariz. at 497, 679

---

1. Article 10, § 8 of the Arizona Constitution states that "Every sale, lease, conveyance, or contract of or concerning any of the lands granted or confirmed, or the use thereof or the natural products thereof made to this State by the said Enabling Act, not made in substantial conformity with the provisions thereof, shall be null and void."

P.2d at 520. As that court noted, significant deviations from the bid specifications certainly do not promote the sale to the "highest and most responsible" bidder. *Id.*

■ ABOR contends that MSMA's bid differed in four significant ways from the bidding specifications. Three of those ways were 1) the contingency of a feasibility study, 2) the contingency of obtaining suitable zoning within nine months after the conclusion of the feasibility study, and 3) all principal payments would apply toward the release of the Farm from the lien of ABOR's carryback Deed of Trust. We discuss the fourth alleged difference below.

MSMA agrees that the basic terms of the solicitation for bids must be met, but argues that the solicitation also included language that encouraged creative dealing in addition to the basic terms. According to MSMA, the only fixed requirements were the price of $12,200,000.00, a 30% down payment and a three-year term with 12% interest on the remaining balance. Beyond that, MSMA argues that a certain amount of ambiguity was built into the bid process that contemplated that potential bidders would have broad latitude to negotiate on remaining aspects of the bid.

MSMA points to the following "creative concepts" language [2]:

> The general nature of this Request for Proposal is an effort by the University to promote the developer's concepts, ingenuity and plans which would best benefit both buyer and seller. The University of Arizona's College of Agriculture will work with the developer toward its goals as originally described in the request.

MSMA contends that its creative bid and the extensive negotiations with the University did not unduly favor MSMA or prejudice other prospective bidders. MSMA argues that the zoning and feasibility study contingencies were mere suggestions and that they should not be considered material deviations if not accepted by ABOR. The only real limitation to the bidding process, according to MSMA, was that the creative nature of the terms of sale be made available to all via the bid process, so that no prospective buyer would be favored. MSMA contends that any bidder could have participated in post-bid negotiations as was done here and that none of the statutory provisions regarding the sale of public lands prevented negotiating creatively.

ABOR argues that the above "creative concepts" language refers to possible development plans, not terms of sale. ABOR points out that those items which were by the legal notices to be negotiable were specifically identified in the same informational packet.[3]

■ We agree with ABOR that the legal notice for sale of the Farm did not allow for creative proposals that substantially deviated from the bidding specifications. We cannot read the notice as broadly as MSMA requests. A legal notice should be interpreted narrowly. The public is best protected under the competitive bidding statutes by holding a notice to its precise language.

The public entity may negotiate with a bidder on reasonable terms specifically designated as negotiable in the legal notices and as allowed by law, but the boundaries of those negotiations are strictly construed. However, the above three terms in MSMA's bid went beyond the scope of what was negotiable and constituted a material deviation from the advertised terms of sale. As we noted in *Chicago Title:*

> It is quite likely ... that a number of prospective bidders did not attend the auction because they decided they could not

---

**2.** This language, while not included in the published legal notice, was included in literature available to potential bidders seeking additional information on ABOR's request for proposals.

**3.** "Successful purchaser must, in accordance with the advertisement placed on this property, negotiate with the University the following:

   1. Location of 15 acres to be retained by University.

   2. Location of ingress and egress to that property.

   3. University's right to retain and remove buildings as listed below.

   4. Providing of water to the retained 15 acres.

   5. Method of dividing 95 acres from 15 acres (wall)."

comply with the printed bidding requirements.... It is unfair to publicize one set of bidding or purchase requirements and thereafter amend them to favor those persons who decide to attend the auction. It is entirely possible the state would have received a substantially higher bid from someone who could comply with the amended requirements, but not the printed requirements.

139 Ariz. at 497, 679 P.2d at 520.

■ The fourth and final difference between the bid and the legal notice was the manner and timing of the earnest money deposit. The legal notice required that the successful bidder deposit 5% of the purchase price or $610,000 in earnest money "within twenty-four hours." MSMA deposited only $100,000 in personal checks as earnest money immediately following the auction and stated that it would deposit an additional $510,000 at the signing of a "mutually acceptable purchase agreement." ABOR contends that the notice required that $610,000 in earnest money be deposited within twenty-four hours of the auction.

The legal notice for sale of the Farm called for two deposits: 1) the successful bidder had to provide 5% of the purchase price as earnest money, and 2) the successful purchaser had to make a down payment of 30% of the purchase price less the deposit.[4] The notice provided that failure to close would result in forfeiture of earnest money deposits and abrogation of the sales contract. If ABOR did not formally approve the terms of sale, the earnest money would be refunded and the bidder would have no further claims against the State of Arizona or ABOR.

MSMA recognizes that A.R.S. section 37–241(A)(1) provides that a deposit must be paid "upon the announcement of the successful bidder" but argues that no statute defines when or how such an announcement takes place. Although MSMA concedes it was the "highest and best bidder" at the auction on May 20, 1986, it argues that it only became the "successful bidder" on September 5, 1986, after finalizing the terms of the agreement to be recommended to ABOR for approval.[5] Thus, according to MSMA, it had not failed to meet that term of the legal notice because ABOR had received $610,000 from MSMA by the date the terms were finalized.

ABOR contends that MSMA became the successful bidder when the University accepted its bid as the highest and best at the auction subject to the formal approval of ABOR. Thus, the failure to deposit the earnest money in cash or cashier's check within twenty-four hours of the auction was one reason MSMA's bid materially deviated from the bidding specifications.

Common sense suggests that the successful bidder would be the party submitting the bid accepted as the highest and best for the land. Even if that bid was subject to formal acceptance by some higher authority, a deposit of earnest money from the successful bidder at the time of the auction would serve its customary purpose as an assurance that the purchaser acted in earnest and good faith. *See Brigham v. First Nat'l Bank of Arizona*, 129 Ariz. 160, 162, 629 P.2d 996, 998 (App.1981).

We agree with MSMA that the legal notice is ambiguous regarding when a party becomes a successful bidder. The notice first states that the Farm would be sold "at public auction to the highest and best *bidder*." (Emphasis added.) The notice then describes the property and states that the exact boundaries and location of the 15 acres to be retained by the University were considered negotiable. Next, the notice reads that "the successful *bidder* will be required to deposit earnest money in the amount of five percent (5%) of the successful bid within 24 hours ... in cash or cashier's check." (Emphasis added.) The notice also explains that the suc-

4. *The amount required to be deposited by A.R.S. § 37–241(A) is 10% of the greater of the appraised value of the property or the amount of the bid. Because of our resolution of this case, we need not address that the deposits required by the legal notice were apparently inconsistent with this statute.*

5. We discuss below MSMA's contention that a binding agreement was entered into at the September 5, 1986 meeting.

cessful purchaser would be required to make a down payment of 30% of the purchase price less the deposit.

The trial court found that the legal notices, "with some reading into," required the earnest money deposit within twenty-four hours of the auction. The facts are not so clear, however, that the trial court could determine that the earnest money was due within twenty-four hours of the auction. While normally the successful bidder would be the party who gave the highest and best bid, the separate use of the terms "highest and best bidder" and "successful bidder" in the legal notice suggests that the latter is not necessarily always the former. ABOR contends and the trial court agreed that the terms are synonymous references to that party with the highest and best bid at the auction. However, the listing of the negotiable terms between the two terms supports MSMA's contention that a party became a "successful bidder" only after being the "highest and best bidder" at auction and then coming to a mutually acceptable agreement regarding the fifteen acres to be retained by the University.

■ The legal notice is ambiguous because it fails to clarify if the payments must be made within twenty-four hours of the public auction or within twenty-four hours of the reaching of an agreement to be recommended to ABOR for acceptance.[6] However, the ambiguity of the proper time for payment of the earnest money need not be resolved. Whether MSMA became the successful bidder at the auction or when the parties agreed upon the negotiable terms, MSMA's payment was improper in any event. MSMA never complied with the requirement that the earnest money be paid in cash or cashier's check; instead it paid in personal checks. The incorrect method of payment furthers the material deviation from the legal notice. The fact that the University never questioned that the earnest money was paid in

personal checks or attempted to "cash" the checks is inconsequential. The state cannot waive deviations from the bidding specifications. Because of the public policies behind the competitive bidding statutes as discussed above, the state cannot relinquish intentionally or inadvertently the requirement that a bid comply with the terms in the legal notice.

In conclusion, an offer to purchase public lands that contains material deviations from the advertised bidding specifications is void *ab initio* and can never be the basis for an agreement. We find that MSMA's bid materially deviated from the terms in the legal notice for the sale of the Farm.

## II

While MSMA's void bid is dispositive, we briefly address the alternative issues raised by MSMA.

■ MSMA contends that at the September 5, 1986 meeting with counsel for ABOR, its bid was accepted after the creative "suggestions" were removed.[7] At this meeting, ABOR passed the following resolution:

> The Arizona Board of Regents hereby authorizes the University of Arizona to execute, within two weeks, an escrow agreement with Main Street Mesa Associates in accordance with the advertised and distributed terms and conditions, subject to approval of the agreement by University and Board counsel. The Board will act on Main Street Mesa Associates' bid to purchase the 95.6 acres of the "Mesa Experimental Farm" at the October 1986 Arizona Board of Regents meeting.

This resolution reiterated that the bid was subject to the formal approval of ABOR which it subsequently failed to receive at the October meeting. The resolution also authorized an execution of an escrow agreement with MSMA in accordance with the terms

---

**6.** That a term is ambiguous in a legal notice, however, does not mean that a bidder can choose whatever interpretation he finds most suitable.

**7.** It is unclear whether MSMA is arguing that its bid was accepted by ABOR to form an agreement, or that its bid was accepted by the University without the material deviations to recom-

mend to ABOR for formal acceptance. MSMA seems to argue a contract existed but concedes in its brief that a binding agreement did not yet exist: "It was hoped that the Board of Regents would approve the agreement and then they would have a binding contract."

We address and reject each argument briefly.

**430**

and conditions advertised in the legal notice. However, an escrow agreement is a conveyancing device, not a contract to sell land. *See Young v. Bishop,* 88 Ariz. 140, 146, 353 P.2d 1017, 1021 (1960).

The statute of frauds applies to the sale of real property. *See* A.R.S. § 44–101(b). Even if the resolution was for the sale of land, the statute of frauds requires that the document be signed by the party sought to be charged. MSMA has presented no argument that the resolution was signed by a party authorized to accept the bid and bind ABOR. Moreover, the resolution is not an agreement to sell the Farm, nor has MSMA alleged that ABOR ever promised to make such an agreement. The resolution merely indicated that ABOR would act on MSMA's bid at the October meeting. That the bid was accepted at the September meeting to consider its adoption in the future does not mean that a contract was formed.

Next, MSMA argues that ABOR is estopped from rejecting the bid because the University negotiated for three and one-half months with MSMA and the bid was in correct form when it was submitted to ABOR at its September 1986 meeting. MSMA also contends that ABOR acted in "bad faith" in rejecting its bid and should therefore be liable for damages. We disagree.

The bid was always subject to the formal approval of ABOR. Absent some showing of improper motive or misrepresentation, ABOR cannot be presumed to have rejected the bid in bad faith. The discretion to accept such a bid does not disappear merely because its agent negotiated with MSMA or because three and one-half months after the auction MSMA finally had a bid that was consistent with the legal notice. Besides, the state cannot be estopped from rejecting a bid that would create a void contract. *See Peterson v. Anderson,* 155 Ariz. 108, 113, 745 P.2d 166, 171 (App.1987); *Clark v. Tinnin,* 81 Ariz. 259, 263, 304 P.2d 947, 950 (1956) (defense of waiver and estoppel cannot be invoked

against an agreement which is void as against public policy).

While we do not condone the action of the University in negotiating with a party over a defective bid, the bid was void *ab initio.* MSMA was not the highest and best bidder at the public auction because its bid was defective. Negotiating the defective terms from that bid cannot revive it.

The trial court properly granted summary judgment for ABOR. MSMA has no claim to the land and title is quieted to ABOR. MSMA's request for attorneys' fees is denied.

### ABOR'S CROSS–APPEAL

In its cross-appeal, ABOR raises six issues. The first issue is whether the trial court properly denied its request for attorneys' fees and costs. ABOR argues that the trial court incorrectly determined that A.R.S. section 12–348 prohibited it from recovering attorneys' fees and costs even though it was the "prevailing party" in the trial court proceedings.

Both a contract and a quiet title action were consolidated in this lawsuit. Generally, a prevailing party in a contract or quiet title action is entitled to be paid costs and to request attorney's fees under an appropriate costs or fees statute. If ABOR is the prevailing party in such a lawsuit, it would be entitled to be paid costs and to request attorneys' fees unless precluded by law.

In its minute order of April 17, 1990, the trial court stated that ABOR was entitled to reasonable attorneys' fees and taxable costs pursuant to A.R.S. section 12–1103[8] and A.R.S. section 12–341.01.[9] ABOR was directed to prepare an affidavit for attorneys' fees with supporting documentation and a statement of costs for the court's consideration.

In its minute order of May 7, 1991, the trial court vacated its prior order and denied fees and costs to ABOR.

8. The exclusive ground for recovery of attorneys' fees in a quiet title action is A.R.S. § 12–1103. *See Lange v. Lotzer,* 151 Ariz. 260, 261, 727 P.2d 38, 39 (App.1986).

9. A.R.S. § 12–341.01(A) provides: "In any contested action arising out of a contract, ... the court may award the successful party reasonable attorney's fees."

## Attorneys' Fees

■ In its denial of fees, the court stated that although ABOR requested a reasonable amount of fees, it could not award them because A.R.S. section 12–348 "precludes an award of fees and other expenses (which would include costs)." The trial court also cited *Lacer v. Navajo County*, 141 Ariz. 392, 687 P.2d 400 (App.1984) as authority for its decision.

A.R.S. section 12–348 provides:

A. In addition to any costs which are awarded as prescribed by statute, a court shall award fees and other expenses to any party other than this state or a city, town or county which prevails by an adjudication on the merits in any of the following:

  1. A civil action brought by the state or a city, town or county against the party.

In *Lacer*, a state entity was not precluded from attorneys' fees but was awarded them under A.R.S. section 12–341.01 for successfully defending an action arising out of a contract. 141 Ariz. at 395, 687 P.2d at 403.

That fees were not available to the state under A.R.S. section 12–348 was discussed in *Maricopa County v. Maricopa County Municipal Water Conservation District No. 1*, 171 Ariz. 325, 332–33, 830 P.2d 846, 853–54 (App.1991), which held that legislative intent [10] and the express wording of the statute exempt political subdivisions from fee awards under the statute. *Id.* at 333, 830 P.2d at 854.

However, A.R.S. section 12–348 does not prevent a court from awarding attorneys' fees to prevailing state entities under a separate fees statute. Section 12–348 merely requires a trial court to award fees and other expenses to prevailing non-state parties in certain cases, including civil actions initiated by the state. *See* A.R.S. § 12–348(A)(1). The statute neither adds to nor detracts from the state's ability to recover its costs under an appropriate costs statute or the trial court's discretion to award fees under an appropriate fees statute. Nothing in A.R.S. section 12–348 or in *Lacer* excludes the state from consideration for attorneys' fees. Indeed, *Maricopa County* found that the trial court erred in failing to consider whether a state entity should be granted a fees award under A.R.S. section 12–341.01. 171 Ariz. at 332, 830 P.2d at 853. Similarly, the trial court erred in the present case in refusing to consider whether ABOR should receive an award of attorneys' fees as the prevailing party.

MSMA argues that the trial court was exercising its discretion under A.R.S. section 12–341.01 when it denied fees to ABOR. After reading its minute order of May 7, 1991, we find it more likely that the trial court relied on an erroneous belief regarding the law under A.R.S. section 12–348 and *Lacer* to preclude a fee award. In any event, the trial court can best clarify its ruling on remand.

## Costs

In its denial of costs, the trial court stated the following:

Counsel for the Regents stated in the Reply that the monthly breakdown of costs is supplied with the computer printouts attached to the Motion for Attorneys Fees. Indeed they are. Counsel also stated the "xerox copies of actual receipts for service of process and depositions" would be provided on or around August 16, 1990. The Court can find no copies of such provided to the Court. It is not incumbent upon the Court or opposing counsel to sift through the computer printouts to list the stated costs in the claimed categories or to guess to which categories the costs might apply.

MSMA argues that the denial of ABOR's costs was based purely on procedural grounds. This argument finds some support in the minute order which suggests that ABOR's statement of costs was convoluted

---

10. The legislative findings that accompany A.R.S. § 12–348 state:

A. The legislature finds that certain individuals, partnerships, corporations and labor or other organizations may be deterred from seeking review of or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights.

. . .

B. The purpose of this section is to reduce the deterrents and the disparity by entitling prevailing parties to recover an award of reasonable attorney fees, expert witness fees and other costs against the state.

**432**

and not timely filed. ABOR would not be entitled to costs if its statement was procedurally inadequate or deficient. On the other hand, another portion of this same minute order, as discussed above, stated that "A.R.S. § 12–348 precludes an award of fees and other expenses (which include costs)." If the trial court precluded costs as it precluded fees because it felt compelled to do so by A.R.S. section 12–348, such an order would be erroneous. As noted above, this statute does not alter the trial court's duty to allow the state to recover its costs under an appropriate costs statute. Because the basis for the trial court's preclusion of ABOR's costs is unclear and may well have been erroneous, the trial court needs to reconsider and clarify its ruling on that issue. The trial court's denial of ABOR's request for costs and fees is reversed and remanded for a new ruling consistent with this decision.

The remaining five issues in ABOR's cross-appeal concern the terms of the alleged land sale contract and MSMA's ability to bring an action. ABOR raised these issues in other motions for summary judgment denied by the trial court. Generally, denial of a motion for summary judgment is a non-appealable order. We are hesitant to address the merits of such issues except in the unusual case. *See Fleitz v. Van Westrienen*, 114 Ariz. 246, 248–49, 560 P.2d 430, 432–33 (App. 1977). We need not do so because the trial court properly granted summary judgment for ABOR on the basis of MSMA's void bid.

MSMA's request for attorneys' fees on cross-appeal is denied.

## CONCLUSION

We affirm the decision of the trial court granting summary judgment in favor of ABOR on the issue of MSMA's material deviation from the bid parameters. We reverse the trial court's denial of ABOR's costs and attorneys' fees and remand those issues for a ruling consistent with this opinion.

CLABORNE, P.J., and McGREGOR, J., concur.